WALTER READE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF DENNIS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

WALTER READE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF WALL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

WALTER READE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF GALLOWAY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

WALTER READE, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT, v. TOWNSHIP OF LACEY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued December 4, 1961—Decided February 5, 1962.

Mr. *John C. Giordano, Jr.,* argued the cause for plaintiff-appellant, Walter Reade, Inc.

Mr. *Theodore W. Geiser* argued the cause for New Jersey Highway Authority, *amicus curiae* (*Messrs. Shaw, Pindar, McElroy, Connell & Foley,* attorneys).

Mr. *Bernard Hellring* argued the cause for intervenor, Buddies Food Services, Inc. (*Messrs. Hellring, Lindeman & Lieberman,* attorneys; *Mr. William I. Schapiro* and *Mr. Norman Bruck,* on the brief).

*Mr. Alan B. Handler,* Deputy Attorney General, argued the cause for respondent Division of Tax Appeals (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

*Mr. Edward W. Haines* argued the cause for defendants-respondents Townships of Dennis and Lacey (*Messrs. Haines & Schuman,* attorneys for Township of Lacey; *Mr. George M. James,* attorney for Township of Dennis).

*Mr. William C. Nowels* argued the cause for defendant-respondent Township of Wall (*Mr. Burton L. Fundler,* on the brief).

*Mr. Benjamin A. Rimm* argued the cause for defendant-respondent Township of Galloway.

The opinion of the court was delivered by

WEINTRAUB, C. J. The New Jersey Highway Authority (herein Authority) constructed the Garden State Parkway, an express highway, along which it erected a series of service areas containing restaurant and other facilities for the needs and convenience of the motorist. Some of these restaurants were operated by Walter Reade, Inc. (herein Reade) under an agreement with the Authority. The lands and buildings were assessed against Reade for local taxation. Reade pursued the administrative remedies without success. We certified its further appeals to the Appellate Division before argument there.

We note that Reade was also assessed with respect to its personal property used in the restaurant operations. Those assessments were not challenged. The assessments here involved relate solely to land and building, including fixed equipment, owned by the Authority.

The townships concede the properties are exempt from taxation against the Authority, but assert the assessments were authorized as against Reade by *L.* 1949, *c.* 177 (*N. J. S. A.* 54:4–2.3 *et seq.*). *N. J. S. A.* 54:4–2.3 reads:

"When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate."

*N. J. S. A.* 54:4–2.8 provides the taxes so levied "shall * * * be a lien upon said leasehold estate and the lessee, or his assignee, shall be personally liable therefor."

Reade operated the facilities under what was labeled a "license" agreement. The prior operator held a like agreement, phrased however as a "lease." The townships contend the wording was changed to evade taxation. Reade, and the Authority speaking as *amicus curiae,* reply that the arrangement was always a "license" and that the correction was made because local assessors had seized upon a misnomer to invoke the statute cited above. We think it unnecessary to decide the true nature of the transactions. The reason is that we are satisfied the act creating the Authority intended an exemption even if the facilities were operated under a "lease" and hence the statute upon which the townships rely does not apply.

The Authority was created by *L.* 1952, *c.* 16 (*N. J. S. A.* 27:12B–1 *et seq.*). Section 4 designated the Authority "a body corporate and politic"; constituted it "an instrumentality exercising public and essential governmental functions"; and ordained that "the exercise by the Authority of the powers conferred by this act in the construction, operation and maintenance of projects shall be deemed and held to be an essential governmental function of the State."

Section 3(d) defines the "project" or "highway project" to include "service areas, service stations, service facilities." Section 5(o) empowers the Authority to make "all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act." Section 14 authorizes the Authority to contract with others for "placing" on the project "gas stations" or "restaurants" and "to fix the terms, conditions, rents and rates

of charges for such use." This section adds that such "charges shall be so fixed and adjusted as to effectuate the purposes of this act and in any event to carry out and perform the terms and provisions of any contract with or for the benefit of holders of bonds or notes."

Finally, we refer to the key provisions of section 16:

"The exercise of the powers granted by this act will be in all respects for the benefit of the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of projects by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority under the provisions of this act or upon the income therefrom, and every project and any property acquired or used by the Authority under the provisions of this act and the income therefrom, and the bonds or notes issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall be exempt from taxation."

The power of the Authority to contract for the operation of the restaurant facilities is amply provided in the provisions we have cited. That these facilities are part of the contemplated public use is not disputed. It is clear they so remained notwithstanding a "lease" to a private operator. *Town of Bloomfield v. New Jersey Highway Authority,* 18 *N. J.* 237, 245–46 (1955); see *Hill v. Borough of Collingswood,* 9 *N. J.* 369, 372–73 (1952); *Township of Hanover v. Town of Morristown,* 4 *N. J. Super.* 22 (*App. Div.* 1949).

The question is whether the statutory exemption accorded the Authority and its property was intended to depend upon whether the authorized facilities were operated for the public use directly by the Authority rather than through an arrangement with another. The statute does not explicitly answer the question but the solution readily emerges from the sense of the situation.

The Legislature intended that the Authority furnish these facilities as part of its public service. It was granted im-

munity from taxation for the further assurance of the financial success of this self-liquidating project.

The thesis of the townships is that the Legislature intended that the broad exemption in the Authority Act be limited by the provisions of *N. J. S. A.* 54:4–2.3. We think that view is incompatible with the evident concern of the Legislature with the fiscal success of the authorized project. The Legislature intended the entire project, including the facilities here involved, to be self-sufficient, and to that end provided the exemption. The experience of the restaurant facilities is of course a part of the total fiscal picture. The Authority was expressly authorized to operate its facilities either directly or through arrangements with others, to the end that it might choose one method or the other upon an appraisal of the relative returns both as to efficiency and dollar result. Although Reade might bear the taxes here involved, quite obviously the burden must ultimately be upon the Authority in negotiations for the future. Taxes must affect the amount of "rental." It would be strange for the Legislature to enable the Authority to choose among several modes of rendering this public service and then encumber the choice with tax consequences. Indeed the irrelevancy of *N. J. S. A.* 54:4–2.3 would be even more apparent under the view the townships appear to accept, that this statute distinguishes between a "lease" and some other method of operation, as for example a "license" or an agency upon a fixed fee.

Tax exemptions in favor of nongovernmental owners are strictly construed in the sense that an exemption will not be extended beyond the ascertainable intention of the Legislature. *Deubel v. Kervick,* 33 *N. J.* 568, 574 (1960). On the other hand it has been held that exemptions in favor of governmental agencies should be liberally construed. *Township of Hanover v. Town of Morristown, supra* (4 *N. J. Super.,* at *p.* 24). Here we have the Legislature's affirmative declaration that the act "shall be liberally construed to effect the purposes thereof." *N. J. S. A.*

27:12B-24. As we have said, the financial success of the entire project was of paramount concern. The result we have reached comports with this legislative mandate.

■ We are aware of other pending litigation involving the problem of tax exemption of property of governmental agencies leased to others. What we say here should be read in the light of the issue before us. We hold simply that the Legislature intended the Authority to be free of the burden of local taxation whether the Authority achieves the specific public purpose assigned to it by direct operation or through an authorized contractual arrangement with another, and hence the facilities in question may not be assessed to a "lessee" under *N. J. S. A.* 54:4–2.3 even if it be assumed that the transaction would otherwise be within the reach of that statute.

This conclusion is supported by *Port of New York Authority v. City of Newark,* 20 *N. J.* 386 (1956). There property, developed by the agency for the public use contemplated by the statute, was leased to United States Air Force which used the facility for a public purpose at least akin to the broad purpose the Legislature had in mind. The municipality contended the transaction destroyed the statutory exemption. There, as here, the decision turned upon the intention of the Legislature in the statute creating the agency and providing for the exemption. The exemption was upheld notwithstanding the public purpose was furthered through a lessee rather than by the direct operation of the agency. See also *Township of Hanover v. Town of Morristown, supra* (4 *N. J. Super.* 22).

The judgments are accordingly reversed with directions to vacate the assessments. No costs.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.