HOPKINS, J.T.C.
Centre Properties Co. (Centre) is the owner of premises known as Essex Green Shopping Plaza in West Orange, New Jersey, which premises are designated on the official tax map as Block 155, Lot 40. Village Supermarkets, Inc. (Supermarkets) is a tenant occupying a portion of the plaza. For tax years 1979 and 1980, Supermarkets filed an appeal from that portion of the local property tax assessments as applicable to its leased premises. Further, it filed an appeal challenging the total assessment for 1981. This latter complaint was filed under the name of Centre.
Centre has moved to intervene on the ground that Supermarkets was not authorized to commence an appeal of that portion of the local property tax applicable to its leasehold nor any appeal on behalf of Centre as to the full assessment. Centre wishes to have the appeals dismissed. Supermarkets objects to the intervention and the dismissal on the ground that as a tenant, its lease provides that it shall pay, as part of its rent, the proportionate part of the local property taxes applicable to its leasehold. On that basis, Supermarkets contends that it is a taxpayer within the provisions of N.J.S.A. 54:3-21 and has standing to prosecute the appeals.
N.J.S.A. 54:3-21 provides in pertinent part as follows:
A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, ... may on or before August 15 appeal to the county board of taxation ... provided, however, that any such taxpayer or taxing district may on or before August 15 file a petition of appeal directly with the tax court, if the assessed valuation of the property subject to the appeal exceeds $750,000.00____ [Emphasis supplied!
The question presented is whether Supermarkets is a taxpayer within the provisions of the statute or was otherwise authorized to appeal.
The lease between Centre and Supermarkets specifically provides that the tenant’s share of the real property taxes shall *484 be computed by a formula which takes into consideration the assessed valuation of both the improvements erected by the tenant and the land upon which such improvements are erected, plus a percentage of the balance of the local property taxes assessed against the total parcel. These payments were to be made to the landlord.
A similar issue was involved in Auditorium Pier Co. v. Atlantic City, 74 N.J.L. 303 (Sup.Ct.1907) wherein the plaintiff was a tenant under a lease which required it “to pay the said yearly rental in manner aforesaid, and to pay all taxes levied on said land and buildings that may be erected thereon.” At 304. The tenant brought suit to set aside the tax assessed upon the property leased by it claiming that no notice had been given to it concerning the levying of the tax. In ordering the case dismissed, the court stated as follows:
The prosecutor in this case can not be deemed to be the taxpayer. His covenant to pay taxes is a persona] one. The tax was rightly levied against the Mary A. Riddle Company [the landlord], and as to the city the Mary A. Riddle Company was the taxpayer. That company only could apply for an apportionment as was done in this case, and that company only could appeal from the tax imposed upon the property, [at 305; emphasis supplied]
The result in the Auditorium Pier case is consistent with principles expressed in other jurisdictions. In Philadelphia Rapid Transit Co. v. United States, 10 F.Supp. 591, 81 Ct.Cl. 289 (1935) cert. den. 300 U.S. 664, 57 S.Ct. 507, 81 L.Ed. 872 (1937), the government claimed that the refund of federal income taxes paid by a lessee corporation could properly be credited against the lessor corporation’s deficiencies in light of contractual obligation on the part of the lessee to pay all taxes imposed upon the lessors. In rejecting this contention the court said:
The taxpayer under this definition is undoubtedly the person against whom the Commissioner may legally assess a tax imposed by the statute____ The contractual obligations of plaintiff to pay the Lessors’ taxes did not make its liability in that respect a tax liability to the government, or make it the taxpayer with respect to such taxes — no more than if the contracts had merely required the plaintiff, as part of the rental, to reimburse the Lessors the amount of any taxes paid by them, [at 600-601]
*485 Similarly, in Brodbine v. Torrence, 545 S.W.2d 743 (Tenn. Sup.Ct.1977) the court, in denying liquor retailers standing to challenge a tax imposed upon wholesalers, stated as follows:
To be considered the “taxpayer” it is not enough to show that in the course of business the economic burden of the tax was passed on to him by the true taxpayer; he must show that the taxing statute, in terms, imposes the tax upon him and creates obligations owing by him to the taxing authority, [at 744]
The above cases indicate a consistent treatment of the term “taxpayer” in dealings with a governmental authority imposing the tax. That treatment is also consistent with the manner in which our Legislature has used the term “taxpayer.” Where it has been used, it has consistently included the element of direct obligation to the taxing authority through the use of such terms as “subject to,” “chargeable with,” or “required to report or to pay the tax in question.” See N.J.S.A. 54:8A-8 (Emergency Transportation Tax); N.J.S.A. 54:8A-66 (Transportation Benefits Tax); N.J.S.A. 54:10A-4(h) (Corporate Business Tax); N.J.S.A. 54:10B-2(e) (Financial Business Tax); N.J.S.A. 54:10D-2(f) (Savings Institution Tax); N.J.S.A. 54:30A-17(a) (Corporate Franchise Tax); N.J.S.A. 54:30A-50(a) (Gross Receipts Tax); N.J.S.A. 54:40A-2(p) (Cigarette Tax); N.J.S.A. 54:41-2 (Alcoholic Beverage Tax); and N.J.S.A. 54A:1-2(l) (Gross Income Tax).
It is apparent from the above that both the courts and the Legislature have treated the term “taxpayer” as designating that party whose obligation to the government is direct, rather than one whose rent is measured by the landlord’s obligation to the government. Accordingly, a tenant has no authority, solely by virtue of its tenancy, to commence an action challenging a local property tax assessment.
The question still remains as to whether the terms of the lease which measured, in part, the rent by a portion of the property tax assessed, implied a covenant authorizing Supermarkets to appeal the assessment as Centre’s agent.
In analyzing the lease for the purpose of ascertaining whether there was an implied covenant authorizing Supermarkets to appeal as agent for Centre, it is necessary to review its terms. In that respect, the certification of Supermarkets’ president to *486 the effect that he had negotiated the lease and that he had always assumed that Supermarkets had authority to appeal the tax assessment is irrelevant unless the authority to appeal can be inferred from the written terms of the lease. Although resort may be had to the circumstances existing at the time the lease was agreed upon in order to establish the meaning of a writing, it is nonetheless well-settled that courts will not make a better or different contract than the parties themselves have seen fit to enter into. Washington Construction Co., Inc. v. Spinella, 8 N.J. 212, 84 A.2d 617 (1951).
The terms of the lease provide that a portion of the rents will be determined by the local property taxes applicable to the leasehold plus a percentage of the total property tax asserted against the balance of the parcel. Those terms must be tested against well-recognized principles in order to ascertain whether they gave authority to the tenant to appeal the tax assessment. In this respect, the court in Marini v. Ireland, 56 N.J 130, 265 A.2d 526 (1970) stated as follows:
A covenant in a lease can arise only by necessary implication from specific language of the lease or because it is indispensable to carry into effect the purpose of the lease. In determining, under contract law, what covenants are implied, the object which the parties had in view and intended to be accomplished, is of primary importance. The subject matter and circumstances of the letting give at least as clear a clue to the natural intentions of the parties as do the written words. It is of course not the province of the court to make a new contract or to supply any material stipulations or conditions which contravene the agreements of the parties. Kampf v. Franklin Life Ins. Co., 33 N.J. 36 [161 A.2d 717] (1960); Washington Construction Co., Inc. v. Spinella, 8 N.J. 212 [84 A.2d 617] (1951); City of Camden v. South Jersey Port Commission, 4 N.J. 357 [73 A.2d 55] (1950); McBride v. Maryland Casualty Co., 128 N.J.L. 64 [23 A.2d 596] (E. & A. 1942). Terms are to be implied not because ‘they are just or reasonable, but rather for the reason that the parties must have intended them and have only failed to express them * * * or because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto. See 12 Am.Jur., Contracts, sec. 239; 14 Am.Jur., Covenants, Conditions and Restrictions, sec. 14.’ William Berland Realty Co. v. Hahne & Co., 26 N.J.Super. 477, 487 [98 A.2d 124] (Ch. 1953), modified 29 N.J.Super. 316 [102 A.2d 686] (App.Div.1954).
See also Silverstein v. Keane, 19 N.J. 1 [115 A.2d 1] (1955); Cragmere Holding Corp. v. Socony Mobile Oil Co., 65 N.J.Super. 322 [167 A.2d 825] (App.Div. 1961). [at 143, 265 A.2d 526].
*487 In applying the above principles, it must be recognized that Supermarkets’ leasehold is only a portion of the property included in the assessment. Any appeal of the assessment must necessarily include the total assessment. As stated in In re Appeal of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 166 A.2d 763 (1961):
A taxpayer who seeks a reduction of an assessment below true value must prove that his share of the total tax burden substantially exceeds the share allocated to others generally. If his proof does not meet that test, it would be of no moment that the assessment of either his land or his building would be excessive if separately measured against the general treatment of land or of improvements respectively. Indeed he would receive an undue advantage if he could confine his proof in a ease of this kind to the treatment of only land or building and have the trier of the facts assume the assessed valuation of the other accords with true value. The burden is his to establish with independent proofs the true value of the parcel with its improvements and that the total assessment of the improved parcel substantially exceeds the ratio of assessment of real property in the taxing district. By the same token, if the taxpayer meets that burden, he is not concerned with such allocation of the resulting figure between land and improvements as may be made administratively for some other purpose. This is not to say that evidence may not be offered as to the value of land and of building separately as a step in the process of proving the total value of land and building as an entity; rather the point is that relief is not warranted unless the total treatment of the parcel as improved violates the existing rule of equality, [at 33-34, 166 A.2d 763]
While the above quotation speaks both in terms of true value and ratio, the provisions of Chapter 123 of the Laws of 1973, as amended, which provide a statutory ratio, are applicable in the subject cases. Weyerhaeuser Co. v. Closter Boro., 190 N.J.Super. 528, 464 A.2d 1156 (App.Div.1983). Accordingly, any implied right of the tenant to appeal the assessment must be the right to appeal the total assessment as distinguished from that portion of the parcel occupied by the tenant. An appeal of the total assessment could result in a financial loss to Centre since not only is it possible for the total assessment to be reduced, but there is also the possibility that the total assessment can be increased. Rabstein v. Princeton Tp., 187 N.J.Super. 18, 453 A.2d 553 (App.Div.1982).
The potential for financial harm to Centre, under the above circumstances, indicates that it would be very reluctant to grant by implication such uncontrolled authority to an individu *488 al tenant. Accordingly, it is concluded that such right was not implicitly granted to Supermarkets merely because some portion of its rent is determined by an allocable portion of the local property tax.
Centre’s motion to dismiss the appeals by Supermarkets in both its name and in Centre’s name is granted.