CRABTREE, J.T.C.
Plaintiffs move for summary judgment in this local property tax case. The narrow issue to be decided is whether a restaurant located at a service area adjacent to the Garden State Parkway in Bloomfield, New Jersey is exempt from taxation. The municipality concedes the exempt status of real property owned by plaintiff New Jersey Highway Authority but argues that plaintiff McDonald’s Corporation is taxable on the value of the improvements, i.e., the restaurant in question.
New Jersey Turnpike Authority and New Jersey Expressway Authority were permitted to appear as amici curiae, and a brief was filed upon their behalf supporting plaintiffs’ position.
The facts are not in dispute. Plaintiff New Jersey Highway Authority (hereafter the Authority) owns and operates The Garden State Parkway, a limited access highway. The parkway consists not only of the roadway itself but all service areas, service stations and service facilities. The Authority is empowered to contract with others for such service facilities as restaurants and gas stations and to fix the terms, conditions, rents and rates of charges for their use. N.J.S.A. 27:12B-14.
*639 Eight restaurants are located on the parkway. Each of them is located at a service area which also contains a gasoline service station. All the restaurants and gas stations are leased to, and operated by, third parties.
One of the restaurants is located on the subject property at the service area known as Brookdale South in Bloomfield, New Jersey. This restaurant is leased to, and operated by, plaintiff McDonald’s Corporation (hereafter McDonald’s).
The lease between the Authority and McDonald’s was entered into in September 1981 and McDonald’s has been in continuous possession thereunder since then.
In or about October 1985 defendant municipality made omitted assessments against the restaurant located on the subject property for the tax years 1984 and 1985 and sent McDonald’s a tax bill. The land was not assessed. No tax was imposed against any part of the subject property for 1982 or 1983.
The lease provided that, in the event real estate taxes or special assessments were imposed upon the demised premises, McDonald’s would pay them and deduct the amount so paid from the rent.
The New Jersey Highway Authority was created by the New Jersey Highway Authority Act, L. 1952, c. 16, N.J.S.A. 27:12B-1 to -26. Section 4 of the act, N.J.S.A. 27:12B-4, constitutes the authority “an instrumentality exercising public and essentially governmental functions” and includes among those functions “the operation and maintenance of projects” which are defined in § 3(d), N.J.S.A. 27:12B-3(d), to include “service areas, service stations, service facilities.” The powers of the Authority are enumerated in § 5 of the act, N.J.S.A. 27:12B-5, and include the power to “acquire, construct, maintain, repair and operate projects” (§ 5(e)) and the power to “make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers.” (§ 5(o)) Section 14, N.J.S.A. 27:12B-14, authorizes the authority to contract with others for the placement of *640 gas stations and restaurants and to “fix the terms, conditions, rents and rates of charges for such use.”
Finally, § 16, N.J.S.A. 27:12B-16, addresses the tax treatment of the Authority and the exercise of its powers under the act. That section provides:
The exercise of the powers granted by this act will be in all respects for the benefit of the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of projects by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority under the provisions of the act or upon the income therefrom, and every project and any property acquired or used by the Authority under the provisions of the act and the income therefrom, and the bonds or notes issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall be exempt from taxation.
A related statute, N.J.S.A. 54:4-2.3, enacted in 1949, L. 1949, c. 177, provides: •
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.
Both § 16 of the New Jersey Highway Authority Act and N.J.S.A. 54:4-2.3 were construed by the New Jersey Supreme Court in Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 177 A.2d 752 (1962), wherein the Court held that a restaurant located at a Garden State Parkway service area and leased by the Authority to an independent contractor was exempt from local property taxation. In addressing the application of both the quoted statutes the Court said:
The question is whether the statutory exemption accorded the Authority and its property was intended to depend upon whether the authorized facilities were operated for the public use directly by the Authority rather than through an arrangement with another. The statute does not explicitly answer the question but the solution readily emerges from the sense of the situation.
The Legislature intended that the Authority furnish these facilities as part of its public service. It was granted immunity from taxation for the further assurance of the financial success of this self-liquidating project.
The thesis of the townships is that the Legislature intended that the broad exemption in the Authority Act be limited by the provisions of N.J.S.A. 54:4-2.3. We think that view is incompatible with the evident concern of the Legislature with the fiscal success of the authorized project. The Legislature intended the *641 entire project, including the facilities here involved, to be self-sufficient, and to that end provided the exemption. The experience of the restaurant facilities is of course a part of the total fiscal picture. The Authority was expressly authorized to operate its facilities either directly or through arrangements with others, to the end that it might choose one method or the other upon an appraisal of the relative returns both as to efficiency and dollar result. Although Reade might bear the taxes here involved, quite obviously the burden must ultimately be upon the Authority in negotiations for the future. Taxes must affect the amount of “rental.” It would be strange for the Legislature to enable the Authority to choose among several modes of rendering this public service and then encumber the choice with tax consequences. Indeed the irrelevancy of N.J.S.A. 54:4-2.3 would be even more apparent under the view the townships appear to accept, that this statute distinguishes between a “lease” and some other method of operation, as for example a “license” or an agency upon a fixed fee. [36 N.J. at 440, 177 A.2d 752; emphasis supplied]
The Court’s observation about the ultimate locus of the burden of local taxation is even more appropriate in the instant case, where the lease between the Authority and McDonald’s provides for an immediate credit against the lessee’s rent if the lessee is required to pay local property taxes.
Defendant-taxing district acknowledges that it is bound by the Supreme Court’s interpretation in Walter Reade of N.J.S.A. 27:12B-16 and N.J.S.A. 54:4-2.3. It argues, however, that Walter Reade has been overruled and N.J.S.A. 27:12B-16 repealed by N.J.S.A. 54:4-1.10, enacted in 1984, which provides:
When real property which is exempt from taxation is used by a private party in connection with an activity conducted for profit, and the use does not render the real property taxable pursuant to section 1 of P.L. 1949, c. 177 (C. 54:4-2.3) or otherwise, the real property shall be assessed and taxed as real property of the private party. The private party is subject to liability for taxation to the same extent as though he owned the property or any portion thereof, unless the owner consents to the taxation thereof. For purposes of this act, “use” means the right or license, express or implied, to possess and enjoy the benefits from any real property, whether or not that right or license is actually exercised.
The argument is unsound. N.J.S.A. 54:4-1.10 has nothing to do with the Supreme Court’s Walter Reade decision nor with the underlying tax exemption afforded to Authority property by N.J.S.A. 27:12B-16. The legislative statement makes it clear that the statute sought to close a loophole in current law, which provided that exempt property leased to a non-exempt party *642 was taxable but if the same property were used under a non-lease arrangement, the exemption was preserved. The Senate Revenue, Finance and Appropriations Committee statement accompanying Assembly Bill 883, L. 1984, c. 176 states:
Assembly Bill No. 883 provides for the assessment and taxation of real property which is otherwise exempt, if it is used by a private party in connection with an activity conducted for profit. The private party is subject to taxation as though he owned the property or a portion of it.
Currently, exempt property leased to a non-exempt party is subject to taxation but if the property is used under a non-lease agreement, it remains non-taxable. This bill changes this inconsistency.
The bill conforms with the Governor’s recommendations in his conditional veto of Assemly Bill No. 3849 of 1983.
The Governor said in his veto message:
Under existing State law, namely, the “Leasehold Taxing Act,” local government units unquestionably have authority to tax private users for premises leased to them by the federal government. The problem is that our taxing statutes, unlike those of some other states, fail to provide for the taxation of private users of federal property when use derives from some arrangement other than á lease. The bill explains that non-leasing “users” would include any party that has a right to possess and benefit from federally-owned real property.[1]
It seems clear from the legislative statement and the Governor’s message that the objective of N.J.S.A. 54:4-1.10 was to close a loophole in N.J.S.A. 54:4-2.3 by eliminating the artificial distinction between leased property and property used under a non-lease arrangement. The purpose of N.J.S.A. 54:4-1.10 was not to overrule Walter Reade nor to erode the tax exemption of N.J.S.A. 27:12B-16. It is well settled that statements of legislative committees as well as messages of the executive illuminate the legislative purpose and intent underlying legislation. Helfrich v. Hamilton Tp., 182 N.J.Super. 365, 440 A.2d 1366 (App.Div.1981); Loveladies Property Owners Ass’n, Inc. v. Raab, 137 N.J.Super. 179, 348 A.2d 540 (App.Div.1975). See *643 New Jersey Civil Service Ass’n v. State, 88 N.J. 605, 615, 443 A.2d 1070 (1982).
Moreover, implied repealers are disfavored in the law and will not be given effect absent a clear, unequivocal indication that the statute at issue was intended to work a substantive change in an earlier statute. New Shrewsbury v. Block 105, Lot 11, et al., 104 N.J.Super. 360, 250 A.2d 53 (Ch.Div.1969), aff’d o.b. per curiam 111 N.J.Super. 550, 270 A.2d 46 (App.Div.1970); Caldwell v. Rochelle Park Tp., 135 N.J.Super. 66, 342 A.2d 583 (Law Div.1975); Helfrich v. Hamilton Tp., supra. In the instant case there is no “clear and unequivocal indication” that N.J.S.A. 54:4-1.10 was meant to qualify or alter the exemption from taxation which the Authority’s property enjoys under N.J.S.A. 27:12B-16.
As if this were not enough, the Authority’s enabling act contains an affirmative legislative mandate according that act pre-eminence over inconsistent legislation. N.J.S.A. 27:12B-26 provides:
All other general or special laws, or parts thereof, inconsistent herewith are hereby declared to be inapplicable to the provisions of this act.[2]
This unambiguous declaration by the Legislature makes it clear that any amendment of the Authority’s enabling act must be adopted directly and explicitly.
In view of the foregoing, plaintiffs’ contentions concerning the tax assessment in issue as an impairment of Authority bondholders’ rights in violation of the New Jersey and United States Constitutions need not be addressed.
Plaintiffs’ motion for summary judgment will be granted. Judgment will be entered declaring defendant’s omitted assessments for tax years 1984 and 1985 invalid.

The Governor's veto message expressed his concern that Assembly Bill 3849 was limited to federally owned tax exempt property and that limitation was the basis for his conditional veto. The limitation did not appear in Assembly Bill 883.

 This assumes, arguendo, an inconsistency. In fact, N.J.S.A. 54:4-1.10 and the New Jersey Highway Authority Act can and should be read in harmony with one another, for the reasons stated in this opinion.