KAHN, J.T.C.
This is the court’s opinion with respect to plaintiff (“taxpayer”) Center for Molecular Medicine and Immunology’s complaint alleging exemption from local property taxation for the 1998 and 1999 tax years. More specifically, this appeal concerns exemption for the facility known as the Garden State Cancer Center (“GSCC”), located at 520 Belleville Ave, Block 540, Lot 1.01.
Taxpayer is a nonprofit entity devoted to conducting laboratory and clinical research regarding detection, diagnosis, and treatment of cancer. In 1988, taxpayer relocated from Kentucky to Newark, New Jersey, where it leased 17,500 square feet of space from the University of Medicine and Dentistry in Newark until it moved to its present Belleville facility, in the fall of 1996. Soon after the relocation to Newark, taxpayer was granted an exemption from federal taxation, pursuant to I.R.C. § 501(c)(3). Moreover, taxpayer was neither assessed nor did it pay any property taxes during its tenure in Newark.
As a result of expanding operations, taxpayer commenced a search for a new facility which eventually focused in on the GSCC. At that time, what is now the GSCC, then known as the Essex County Geriatric Center, was a vacant, county-owned property, deemed a redevelopment area by the township council. The entire property, consisting of an 18.59 acre tract, with approximately 200,000 square feet of physical improvements, was, until *348 1997, exempt from local property taxes as county-owned land, under N.J.S.A. 54:4-3.3.
After meetings with the municipality, taxpayer decided to relocate to the GSCC. Taxpayer received a $10,500,000 construction grant from the U.S. Department of Energy to finance the purchase. The final agreement between Essex County and the taxpayer was entered into on July 20, 1995. The property was, in effect, transferred from the county to the taxpayer through four sets of deeds. The initial transfer consisted of two deeds, which simultaneously transferred the land and improvements from the county to the Essex County Improvement Authority. Then, the Essex County Improvement Authority granted two identical deeds to taxpayer, instantaneously transferring the land and improvements to taxpayer. The cumulative effect of these deeds was to transfer the land and improvements from the county to the taxpayer.
The deeds contained two sets of reverter clauses, which had the effect of transferring the property back to Essex County upon the occurrence of certain events. One such clause mandated that the property revert back to the county if the taxpayer (1) failed to use the premises for health care related uses, (2) voluntarily lost its tax exempt status, or (3) purposely built beyond the designated footprint land.[1] More importantly, the deeds contained the following reverter clause, which automatically divested taxpayer of ownership by vesting the county with a fee simple absolute interest after a term of 25 years.
*349 On June 22, 2020, all of CMMI’s right, title and interest in and to .. [the building and the property] shall automatically revert to the grantor and on such date, the grantor shall be vested indefeasible fee simple absolute in and to the property, subject to the exclusive right of CMMI and its successors and assigns to have an irrevocable option to lease the premises upon certain terms and conditions set forth in certain leases .. attached hereto and incorporated into Schedule R
In the fall of 1996, taxpayer took possession of the property and the 200,000 square foot building currently referred to as the GSCC. The building consists of nine floors and a basement, which is divided into three distinct areas: the east wing, the west wing, and the center area. The parties agree that, at that time, the entire structure was in extremely poor condition. In fact, out of the total 200,000 square feet, only 175,000 square feet were usable.[2] To alleviate this condition, taxpayer developed a five phase plan which would renovate and restore this building to make it suitable for cancer research and development.
As of October 1, 1997 and 1998, taxpayer had completed the first phase of the plan, which comprised occupancy and use of approximately 70,000 square feet.[3] Those renovations consisted of (1) demolition of existing space, (2) asbestos abatement in those areas, and (3) finishing or fitting out those spaces. As of the trial date, architectural drawings were being drafted, and funds were allocated for the second phase. Taxpayer began second phase improvements by demolition of existing improvements and implementing asbestos abatement in an additional 45,000 square feet. Thus, taxpayer occupied, or was in the process of restoring, a total of 115,000 of 175,000 of the building’s usable square footage. The majority of the first and second phase improvements took place on the basement and first four floors, while renovation of the upper floors was reserved for the later phases of the plan.
*350 Prior to taxpayer’s occupation of the building, the property was tax exempt under N.J.S.A. 54:4-3.3, as comity owned, and no real property taxes were imposed on the property for the 1995 or 1996 tax years. After inspecting the property, the municipality sent taxpayer a letter, dated January 29, 1997, indicating that the property would be placed on the 1997 tax list. Since that time, the property has been subject to a yearly assessment. Taxpayer appealed the assessments for the 1997, 1998, and 1999 tax years. The only years currently in issue, however, are the 1998 and 1999 tax years.[4]
The issue presently before the court is whether taxpayer should be exempt from local property taxation under either N.J.S.A. 54:4-3.3 or N.J.S.A. 54:4-3.6. Those two statutes are mutually exclusive. Thus, analysis under section 3.3 precludes analysis under section 3.6, and vice versa. Whether the court should undergo an analysis under section 3.3 or 3.6 turns on whether the county or taxpayer owns the property. More specifically, a determination that the GSCC is county-owned triggers an analysis under section 3.3. In contrast, a finding that the GSCC is owned by taxpayer requires analysis under section 3.6.
For the reasons hereinafter stated, this court finds that the GSCC is owned by the county. Thus, in order for taxpayer to qualify for an exemption from local property taxation, it must do so pursuant to N.J.S.A. 54:4-3.3. To qualify for an exemption under N.J.S.A. 54:4-3.3, taxpayer must show that (1) the property is county owned, and (2) it is used to further a public purpose. Even though the burden of proof is on taxpayer, courts adopt a more liberal attitude toward tax exemptions sought by governmental agencies.

*351
I. Ownership.

The first issue before the court is to determine whether Essex County or taxpayer owns the property. To undertake such an analysis, the court must ascertain the type of estate granted to taxpayer. Generally, an estate in fee simple determinable is an estate in fee simple which automatically terminates upon the occurrence of a given event, with the grantor retaining the possibility of reverter upon occurrence of the event.[5] See Hagaman v. Board of Ed. of Woodbridge Tp., 117 N.J.Super. 446, 285 A.2d 63 (App.Div.1971). This estate is created by words of art, fixing a conditional limitation, as “so long as,” “until,” or “during.” See Eggleston v. Fox, 96 N.J.Super. 142, 232 A.2d 670 (App.Div.1967). Where, however, a deed recites a conveyance in fee, but provides for the estate to terminate simply upon the expiration of a specific length of time, the estate conveyed is not a fee simple determinable. Such an estate is, rather, a tenancy for years. Regardless of its title, this type of estate is a non-freehold estate, and, in fact, is considered a leasehold. See Claremont Health Systems, Inc. v. Point Pleasant Bor., 16 N.J. Tax 604, 621-623 (Tax Ct.1997). The grantor of a tenancy for years retains ownership of the estate through the right of reverter, while the grantee merely retains a leasehold interest for whatever period of years is fixed by the deed.[6]
For example, in Claremont Health Systems, Inc., supra, the Tax Court held that an operator did not own a nursing home building within the meaning of an exemption statute where the property was transferred via a deed in which the property auto *352 matically reverted back to grantor after the expiration of thirty-five years. Id. at 623-25. There, the court held that the reverter limitation in the deed-had the effect of conferring a non-freehold estate to the grantee, because the grantee would automatically be divested after expiration of the thirty-five year period.
In the present case, the deeds contain a clause which automatically transfers the estate back to the county (grantor) after a fixed period of twenty-five years. Moreover, that clause specifically states that the county retains the right of reverter, thus vesting it with a fee simple absolute when the twenty-five years have expired. Put simply, the GSCC will automatically revert to the county after twenty-five years. The effect of this clause is to give taxpayer an interest for years in the GSCC. Thus, similar to the situation in Claremont, taxpayer’s present interest is non-freehold and is synonymous with a leasehold, which carries no ownership rights.[7] In sum, because the deeds in question only grant taxpayer an interest for a term of years, the county retained ownership.

II. Public and Exclusive Use

In order to qualify for an exemption under N.J.S.A. 54:4-3.3, taxpayer must demonstrate that the property is used for a public purpose. See Jamouneau v. Division of Tax Appeals, 2 N.J. 325, 66 A.2d 534 (1949). This requirement is, however, accorded a liberal construction, one which is reasonably broad enough to encompass legislative aims. See City of Newark v. Essex County Board of Taxation, 103 N.J.Super. 41, 246 A.2d 509 *353 (Law Div.1968), modified, on other grounds 54 N.J. 171, 254 A.2d 513, cert. denied sub nom., City of Newark v. Port of New York Authority, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452 (1969). In order to fulfill this requirement, taxpayer need not show that the entire property is currently being used in furtherance of said public purpose. Rather, taxpayer need only demonstrate that the county-owned land is presently intended to be devoted to a public use within a reasonable period of time. See Bergen County v. Paramus Bor., 79 N.J. 302, 399 A.2d 616 (1979).
To qualify for an exemption under N.J.S.A. 54:4-3.3, taxpayer must show (1) that the property is being used for a public purpose, and (2) the portion of the property not yet being occupied will be put to a public use within a reasonable period of time.
A Public Use
In addition to showing that Essex County owns the GSCC, taxpayer must also prove that the property is being used to further a public purpose. A lease between a county and a private entity does not remove governmental immunity from local property tax as long as the private entity uses the property as it was intended to be used under the governing provisions and in the fashion the tax immunity was intended. See Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 441, 177 A.2d 752 (1962). “If a private user of public property is carrying out a public purpose, the real property will not be taxed for local property tax purposes.” City of Egg Harbor v. Atlantic County, 10 N.J. Tax 7,19 (Tax Ct.1988). Moreover, the words “public purpose” should be given a broad construction. See City of Newark v. Essex County Board of Taxation, supra, 108 N.J.Super. 41, 246 A.2d 509. Generally, a public purpose is “an activity which serves as a benefit to the community as a whole and which, at the same time, is directly related to the functions of government.” Holmdel Tp. v. New Jersey Highway Authority, 329 N.J.Super. 410, 424, 748 A.2d 128 (App.Div.2000). Interpretation of this term must be elastic so it can adjust to the changing public needs of modern dynamic society. Ibid.
*354 The New Jersey Legislature has clearly recognized the public need for cancer research in this State by enacting the following statute:
The Legislature finds and declares that, although this State has the highest cancer death rate in the nation for many of the most frequently fatal types of cancers, it has provided relatively little encouragement for cancer studies at any of its local institutions involved in basic biomedical research; and that this failure has made New Jersey unattractive for the recruitment of highly skilled cancer investigators, has reduced the State’s capacity to compete for its fair share of federal and private research dollars, and has been responsible for delaying the development of services and facilities necessary to conduct productive research. New Jersey’s failure to make a concerted and intense effort in the war against cancer has deprived its citizens of the benefits resulting from the latest advances in basic cancer research.
The Legislature further finds that the State can ill afford to continue its present policy in this regard. Corrective measures should be adopted promptly and funded adequately to make up for lost ground and to make the State competitive in the area of cancer research within the next 5 years.
[N.J.S.A. 52:9U-2]
This statute is clear evidence that the New Jersey Legislature deems cancer research a sufficient public purpose within N.J.S.A. 54:4-3.3. Taxpayer is engaged in cancer research, competes for and has received extensive federal funding from the Department of Energy, as well as the National Institutes of Health. Thus, the GSCC is clearly operated in furtherance of a public purpose as specified by N.J.S.A. 54:4-3.3.
The municipality’s argument that Essex County must be designated with the explicit legislative directive to conduct cancer research is without merit.[8] State and municipal governments are not entities vested only with the power to regulate in specific areas of law. Rather, they maintain a broadly-defined police power which enables them to regulate for the health, safety, welfare, and morality of the persons within them borders-. This court, therefore, finds that, pursuant to N.J.S.A. 54:4-3.3, taxpay *355 er’s activities conducted at the GSCC clearly foster a public purpose within that police power.

B. Exclusive Use

The final issue this court must determine is whether the GSCC is exclusively used for the aforementioned public purpose. This court does not have the authority to undertake an apportionment of the land to grant an exemption under N.J.S.A. 54:4-3.3. See Essex County v. City of East Orange, 214 N.J.Super. 568, 578, 520 A.2d 788 (App.Div.1987), certif. denied, 107 N.J. 120, 526 A.2d 189 (1987).[9] Thus, when a court commences an exemption analysis pursuant to N.J.S.A. 54:4-3.3, the property under scrutiny must either be totally taxed or totally exempt. Ibid. This does not mean, however, that the entire piece of land at issue must “actually” be in use as of the relevant valuation date. To obtain an exemption from taxation under N.J.S.A. 54:4-3.3, the county-owned land must be presently intended to be devoted to a public use within a reasonable period of time. Ibid.
In Bergen County v. Paramus Bor., supra, 79 N.J. 302, 399 A.2d 616, the Supreme Court underscored the necessity for a realistic approach to the use requirement.
To interpret the word ‘use’ to mean only actual use would be unrealistic, for a period of time will undoubtedly run between acquisition and placing the property in use. Some lead time will be involved due to readying the land and constructing whatever type of structures may be needed.
[Id. at 308, 399 A.2d 616.]
In the present case, both parties have stipulated that the property was in decrepit condition when taxpayer entered the premises in the fall of 1996. Upon relocation, taxpayer commenced a five-phase plan to rehabilitate the entire building, a *356 rehabilitation which was largely, if not entirely, financed with public funding. Since that time, taxpayer has completely renovated and is currently using a significant portion of the property (70,000 square feet). Moreover, taxpayer has commenced rehabilitation of an additional 45,000 square feet with an intention of completing rehabilitation in those areas. In light of the deplorable condition of the building in the fall of 1996, and the court’s analysis in Bergen County v. Paramus Bor., supra, this court holds that taxpayer’s five-phase plan, coupled with the renovations already completed, evidence that taxpayer intends to devote the entire parcel for a public use, and will do so in a reasonable amount of time.

CONCLUSION

For the reasons stated, taxpayer qualifies for exemption under N.J.S.A. 54:4-3.3. Accordingly, no analysis under N.J.S.A. 54:4-3.6 is required. As a result, the property is exempt from local property taxation for the 1998 and 1999 tax years.

 Those clauses stated: "In addition, title to the Building shall automatically revert to the Grantor upon the following events, to the extent not inconsistent with the conditions of a United States Department of Energy ("DOE”) Grant DE-FGOT-87CH10320 previously made to CMMI: 1. The premises permanently cease to be used for health care related uses, or, except as permitted in the financing documents of the County of Essex Guaranteed Revenue Bonds Series 1995 (Garden State Cancer Project) ("The Bonds”), CMMI shall transfer its interest in the premises by instrument or operation of law without the approval of the grantor. 2. CMMI through its voluntar) acts loses its tax exempt status. 3. CMMI voluntarily without the consent of the Grantor builds a building on the land and/or enlarges the building beyond the footprint land.”

 The record indicates that 25,000 square feet were unusable crawl space.

 There is some dispute regarding the amount of space actually occupied and used by taxpayer. More specifically, taxpayer contends that it uses approximately 70,000 square feet, while the municipality argues that taxpayer uses about 68,000 square feet. This dispute, however, is not relevant to the ultimate issue m tins case.

 The 1997 appeal was dismissed by the court on a motion for summary judgment as being untimely. See Center for Molecular Medicine and Immunology v. Belleville Tp., 18 N.J. Tax 215 (Tax Ct.1998), rev’d, 19 N.J. Tax 193 (Tax Ct.2000), certif. denied, 165 N.J. 677, 762 A.2d 658 (2001). That decision was reversed by the Appellate Division, which remanded the matter for trial. Our Supreme Court recently denied a petition for certification.

 An estate in reversion is the residue of estate left in grantor, to commence in possession after determination of some particular'estate granted by grantor. An estate in reversion arises by operation of law and is distinguishable from a remainder which must be created by deed or devise Reversions are actual estates in praesenti and are vested in the sense of a present fixed right to enjoy the property in the future.

 Although the deed from Essex County to taxpayer.refers to a purportedly irrevocable option enabling taxpayer to re-lease the premises, neither party argued that said clause has the effect of converting taxpayer's interest into a fee simple absolute.

 This case is clearly distinguishable from the Tax Court's holding in Renaissance Plaza Associates, LP v. City of Atlantic City, 18 N.J. Tax 342 (Tax Ct.1998). There, the court found that a ninety-nine year lease, with an option to purchase after twenty years, was a de facto fee simple for property tax purposes. Id. at 352. In support of its conclusion, the court cited previous case law, which equated ninety-nine year leases to ownership in fee simple. Id. at 346-353. It is important to note that there was no case cited where a court treated a lease for less than ninety-nine years as a fee simple. The present facts are clearly distinguishable from this line of cases, and more akin to the facts in Claremont Health Systems, Inc. v. Point Pleasant Bor., supra, 16 N.J. Tax 604, because the present conveyance is only for a term of twenty-five years, and it contains several different limiting clauses.

 The municipality cites case law where exemptions were sought under different, more restrictive exemption statutes. See, e.g., Holmdel Tp. v. New Jersey Highway Authority, supra, 329 N.J.Super. 410, 748 A.2d 128; Walter Reade, Inc. v. Dennis Tp., supra, 36 N.J. 435, 177 A.2d 752; Bergen County v. Leonid Bor., 14 N.J. Tax 142. Those cases are not applicable to an exemption sought under N.J.S.A. 54:4-3.3.

 In Essex County v City of East Orange, supra, the court pointed out that, if the Legislature intended N.J.S.A. 54:4-3.3 to allow apportionment, it would have specifically provided for it. To underscore this point, the court pointed to the apportionment language present in N J S.A 54:4-3.6 as an example. Essex County v. City of East Orange, supra, 214 N.J.Super. at 578, 520 A.2d 788; see also Roman Catholic Archdiocese of Newark v. City of East Orange, 17 N J. Tax 298 (Tax Ct.1998), aff'd., 18 N J. Tax 649 (App.Div.2000).