KAHN, J.T.C.
This is the court’s determination with respect to cross-motions for summary judgment. The tax years in question are part of 1998 and all of 1999. Plaintiff (taxpayer) seeks summary judgment declaring the subject property (land only) to be exempt from local property taxes. Defendant (municipality) conversely seeks summary judgment affirming the existing assessment totaling $212,700.
In an effort to narrow the issues, the parties have submitted a stipulation of facts as follows:[1]
1. The subject property is Block 2537, Lot 1, in the City of Newark.
2. On November 6, 1997, taxpayer entered into an abatement agreement with municipality which was granted for a term of thirty years from the date of the first certificate of occupancy.
3. The first certificate of occupancy was issued to taxpayer on October 15, 2000, and since then, the property has been tax-abated.
4. Taxpayer agreed to pay property taxes as part of its abatement agreement.
5. On August 1, 1998, the Newark Housing Authority (Authority) leased the subject property to taxpayer pursuant to a lease-purchase agreement.
6. The purpose of the lease was to enable taxpayer to develop the property for 92 subsidized, low-income housing units, with 20 housing units dedicated to foster families under a state initiative to promote foster parenting in urban areas; the construction of a non-profit daycare and community center; and the provision of free job-training, health care, education, and transportation services.
7. The development was funded by a $24,882,000 grant from the United States Department of Housing and Urban Development.
8. From 1986 to 1998, when the Authority leased the property to taxpayer, the property was vacant.
9. During the 1998 and 1999 tax years and at all times relevant to those two years, the property was owned by the Authority.
Additionally, there is no dispute that taxpayer began its efforts to develop the property on or about August 1,1998, the date of the aforementioned lease-purchase agreement. On October 1, 1998, *531 taxpayer’s construction had begun but was nowhere near completion. Taxpayer had not received any certificates of occupancy at that time.[2]
Taxpayer contends that the subject property, owned as of October 1, 1998 by the Authority, should be found to be exempt from local property taxes, despite the existence of the aforementioned agreements between taxpayer and the municipality. Taxpayer relies on N.J.S.A. 40A:12A-36, which states as follows:
All projects and all other properties of a redevelopment agency or housing authority are hereby declared to be public property of a political subdivision of the State and devoted to an essential public and governmental function and purpose and shall be exempt from all taxes and special assessments of the State or any subdivision thereof.
The municipality’s reliance upon taxpayer’s failure to meet the requirements of N.J.S.A. 54:4-3.6 is misplaced because the taxpayer’s claim to an exemption is based only on N.J.S.A. 40A:12A-1 to A9. The municipality also contends that (1) taxpayer lacks standing to file the appeal, because taxpayer is not the owner of the subject property; and (2) the agreements entered into between taxpayer and the municipality effectively terminate the property’s exempt status pursuant to N.J.S.A. 54:4-2.3, which states:
When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.
I. LAW AND ANALYSIS
A. Summary Judgment Standard.
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d *532 146 (1995), the Supreme Court of New Jersey revised the summary judgment standard[3] and articulated:
[W]hen deciding a motion for summary judgment under Ride 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
[142 N.J. at 523, 666 A.2d 146]
Furthermore, “the court must accept as true all the evidence which supports the position of the party defending against the motion and must accord ... [the party] the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.” Brill, supra, 142 N.J. at 535, 666 A.2d 146 (citing Pressler, Current N.J. Court Rules, comment on R. 4:40-2 (1991) (citations omitted)).
B. Taxpayer’s Standing to File the Appeal.
The municipality contends that taxpayer lacks standing to file the appeal, since taxpayer is not the owner of the property. This court rejects this argument. The right to appeal local property tax assessments is granted by N.J.S.A. 54:3-21 which provides:
A taxpayer feeling aggrieved by the assessed valuation of the taxpayer’s property ... may on or before April 1, or 45 days from the date the bulk mailing of notification of assessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal----
[Emphasis added].
In Ewing Tp. v. Mercer Paper Tube Corp., 8 N.J.Tax 84 (1985), the Tax Court held that “the Legislature intended to include within the class ‘aggrieved taxpayers’ [of N.J.S.A 54:3-21] ... *533 any lessee whose lease covers the full tax year and requires him to pay the full assessment of the taxes levied.” Id. at 91. In the present case, the municipality relies on Village Supermarkets, Inc. v. West Orange Tp., 6 N.J.Tax 481 (1984), rev’d, 206 N.J.Super. 597, 503 A.2d 370 (App.Div.1986), aff'd, as modified, 106 N.J. 628, 525 A.2d 323 (1987), in making its contention that only the legal owner has standing to challenge the assessment. The Tax Court, in Mercer Paper Tube, supra, however, distinguished Village Supermarkets as a holding that applies only to a situation where the taxpayer occupies only a portion of the assessed property. The Tax Court stated:
Village Supermarkets is distinguishable in that there the tenant to whom the court denied standing to appeal occupied only a portion of the assessed property which was a shopping plaza. Under its lease it was not responsible for the plaza’s total tax; instead it was chargeable with only the proportionate share that its leasehold bore to the entire property. Judge Hopkins pointed out that ... an appeal could result in an increased assessment for the entire property; therefore, he concluded that the tenant did not possess the authority to appeal a partial assessment. However, he specifically left open the question of whether a tenant chargeable with the total tax had an implied right to appeal the total assessment.
[Mercer Paper Tube, 8 N.J.Tax at 87-88 (citing Village Supermarkets, supra, 6 N.J.Tax at 487) (emphasis added) (citation omitted).]
In addition to the Tax Court’s ruling in Mercer Paper Tube (that a tenant whose lease covers the full tax year and requires him to pay the full assessment has standing to appeal the assessment), the court further held that the owner of the real property is a necessary party, and any appeal by the tenant must be instituted in the name of the owner by the tenant as express agent for the owner, or the owner must be included as a co-plaintiff or co-defendant. 8 N.J.Tax at 91-92. Clearly, the purpose of this ruling was to insure that the municipality received payment of the taxes. In the present case, however, the owner of the property (the Authority) is a branch of the municipality which is exempt from paying taxes on its land pursuant to N.J.S.A. 40A:12A-36 [4] and, therefore, including the owner as a party in this case would do nothing to insure the payment of the taxes.
*534 C. Taxable Status of the Property.
The Authority (the Newark Housing Authority) was created by L. 1949, c. 306 (N.J.S.A 40AH2A-1 to 49), the Local Redevelopment and Housing Law (Act). The powers of the Authority under the Act, stated in N.J.S.A. 40AU2A-4, are as follow:
In exercising the redevelopment and rehabilitation functions provided for in this act:
a. A municipal governing body shall have the power to:
(1) Cause a preliminary investigation to be made pursuant to subsection a. of section 6 of P.L.1992, c. 79 (C.40A:12A-6) as to whether an area is in need of redevelopment;
(2) Determine pursuant to subsection b. of section 6 of P.L.1992, c. 79 (C.40A:12A-6) that an area is in need of redevelopment;
(3) Adopt a redevelopment plan pursuant to section 7 of P.L.1992, c. 79 (C.40A:12A-7);
(4) Determine pursuant to section 14 of P.L.1992, e. 79 (C.40A:12A-14) that an area is in need of rehabilitation.
b. A municipal planning board shall have the power to:
(1) Conduct, when authorized by the municipal governing body, a preliminary investigation and hearing and make a recommendation pursuant to subsection b. of section 6 of P.L.1992, c. 79 (C.40A:12A-6) as to whether an area is in need of redevelopment;
(2) Make recommendations concerning a redevelopment plan pursuant to subsection e. of section 7 of P.L.1992, e. 79 (C.40A:12A-7), or prepare a redevelopment plan pursuant to subsection f. of that section.
(3) Make recommendations concerning the determination of an area in need of rehabilitation pursuant to section 14 of P.L.1992, e. 79 (C.40A:12A-14).
c. The municipality shall be responsible for implementing redevelopment plans and carrying out redevelopment projects pursuant to section 8 of P.L.1992, c. 79 (C.40A:12A-8). The municipality may execute these responsibilities directly, or in addition thereto or in lieu thereof, through either a municipal redevelopment agency, or a municipal housing authority authorized to exercise redevelopment powers pursuant to section 21 of P.L.1992, c. 79 (C.40A:12A-21), but there shall be only one redevelopment entity responsible for each redevelopment project. A county improvement authority authorized to undertake redevelopment projects pursuant to the “county improvement authorities law,” P.L.1960, c. 183 (C.40:37A-44 et seq.) may also act as a redevelopment entity pursuant to this act. The redevelopment entity, so authorized, may contract with any other public body, in accordance with the provisions of section 8 of P.L.1992, c. 79 (C.tOA:12A-8), for the carrying out of a redevelopment project or any part thereof under its jurisdiction. Notwithstanding the above, the governing body of the municipality may, by ordinance, change or rescind the designation of the redevelopment entity responsible for implementing a redevelopment plan and carrying out a redevelopment project and may assume this responsibility itself, but only the redevelopment entity authorized to undertake a particular redevelopment project shall remain authorized *535 to complete it, unless the redevelopment entity and redeveloper agree otherwise, or unless no obligations have been entered into by the redevelopment entity with parties other than the municipality. This shall not diminish the power of the municipality to dissolve a redevelopment entity pursuant to section 24 of P.L.1992, c. 79 (C.40A:12A-24), and section 20 of the “Local Authorities Fiscal Control Law,” P.L.1983, e. 313 (C.40A:5A-20).
[Emphasis added.]
The Act defines the Authority’s tax exempt status in these broad terms:
All projects and all other propeHies of a redevelopment agency or housing authority are hereby declared to be public property of a political subdivision of the State and devoted to an essential public and governmental function and purpose and shall be exempt from all taxes and special assessments of the State or any subdivision thereof All bonds issued pursuant to this act are declared to be issued by a political subdivision of this State and for an essential public and governmental purpose and to be a public instrumentality and such bonds, and the interest thereon and the income therefrom, and all charges, funds, revenues and other moneys pledged or available to pay or secure the payment of such bonds, or interest thereon, shall at all times be exempt from taxation except for transfer, inheritance and estate taxes and taxes on transfers by or in contemplation of death.
[NJ.S.A. 40A:12A-36 (emphasis added).]
The power of the Authority to contract for redevelopment of the subject property to provide low-income housing is clearly provided in the above provisions. The municipality does not dispute that taxpayer’s eventual use of the property qualifies for a contemplated use under the Act. The only question is whether the exemption accorded the Authority was intended by the Act to depend upon whether the public use was undertaken by the Authority directly rather than through an arrangement with another.
The Supreme Court of New Jersey has answered this question in its decisions in Walter Reade, Inc. v. Dennis Tp. 36 N.J. 435, 177 A.2d 752 (1962), and Port of N.Y. Auth. v. City of Newark, 20 N.J. 386, 120 A.2d 18 (1956). In both cases, the Supreme Court held that the Legislature intended the property of the public agencies granted tax exemption would be exempt from taxation whether the public use was achieved by direct operation of the agency or by lease to another entity. In Walter Reade, supra, the Supreme Court stated:
*536 We hold simply that the Legislature intended the Authority to be free of the burden of local taxation whether the Autimity achieves the specific public pmpose assigned to it by direct operation or through an authorized contractual arrangement with another, and hence the facilities in question may not be assessed to a “lessee” under N.J.S.A. 54:4-2.3 [supra] even if it be assumed that the transaction would otherwise be within the reach of that statute.
This conclusion is supported by Port of New York Authority v. City of Newark, 20 N.J. 386, 120 A.2d 18. There property, developed by the agency for the public use contemplated by the statute, was leased to United States Air Force which used the facility for a public purpose at least akin to the broad purpose the Legislature had in mind. The municipality contended the transaction destroyed the statutory exemption. There, as here, the decision turned upon the intention of the Legislature in the statute creating the agency and providing for the exemption. The exemption was upheld notwithstanding the public purpose was furthered through a lessee rather than by the direct operation of the agency. See also Township of Hanover v. Town of Morristown, supra, 4 N.J.Super. 22, 66 A.2d 187.
[36 N.J. at 441, 177 A.2d 752 (emphasis added).]
The Supreme Court, in Todd Shipyards Corp. v. Weehawken Tp., 45 N.J. 336, 212 A.2d 364 (1965), reiterated that when a public body leases property to a private organization, the issue as to whether the property would receive an exemption from local property tax would depend upon the use,
The property to be exempt so long as it was devoted to the public use contemplated by the exempting statute, without regard to the relationship between the public body and the operator of the facility. In short, where the lease is the medium used to further the public purpose the Legislature assigned to the State’s agency, the reason for the exemption continues.
[Id. at 345, 212 A.2d 364.]
See also South Jersey Trans. v. City of Pleasantville, 312 N.J.Super. 438, 712 A.2d 215 (App.Div.1998). For the above reasons, this court finds that by enacting N.J.S.A 40A:12A-36 of the Local Redevelopment and Housing Law, the Legislature intended the Authority to be exempt from taxation, whether the contemplated use was achieved by direct operation or by lease to another entity.
II. CONCLUSION
Accordingly, plaintiffs motion for summary judgment declaring the subject property exempt from taxation is granted, and the municipality’s cross-motion for summary judgment is denied.

 The stipulated facts have been rearranged from the .sequence in which they were submitted to the Tax Court.

 As stated in the stipulated facts, the first certificate of-occupancy was issued to taxpayer on October 15, 2000.

Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954), appeal after remand, 25 N.J. 17, 134 A.2d 761 (1957), was the “definitive expression of the standards governing the grant or denial of a summary judgment motion.” Pressler, Current N.J. Court Rules, comment on N.J.R.E. 4:46-2 (2002). Before the Brill revision, summary judgments were rarely and sparingly granted because jt was necessary to “palpably” demonstrate there is no genuine issue of material fact. See Judson, supra, 17 N.J. at 74, 110 A.2d 24.

 The Authority’s exempt status is an argument raised by the taxpayer and is considered subsequently in this opinion.