NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4799-17T3

GOURMET DINING, LLC,

     Plaintiff-Appellant,

v.

UNION TOWNSHIP and NEW
JERSEY EDUCATIONAL
FACILITIES AUTHORITY,

     Defendants-Respondents,

and

KEAN UNIVERSITY,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 31, 2019**
>
> **APPELLATE DIVISION**

Argued April 2, 2019 – Decided May 31, 2019

Before Judges Yannotti, Rothstadt and Natali.

On appeal from the Tax Court of New Jersey, Docket Nos. 16504-2013 and 12334-2014.

Robert F. Giancaterino argued the cause for appellants (Skoloff & Wolfe, PC, attorneys; David B. Wolfe, Barbara A. Schweiger and Rebecca L. Hutcheon, on the briefs).

Robert F. Renaud argued the cause for respondent Union Township (Renaud DeAppolonio, LLC, attorneys; Robert F. Renaud and Adam J. Colicchio, on the brief).

Jamie M. Zug, Deputy Attorney General, argued the cause for respondent New Jersey Educational Facilities Authority (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jamie M. Zug, on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Gourmet Dining, LLC, operates a restaurant in a building on the campus of Kean University (the University) in the Township of Union (the Township). The Tax Court held that the premises where Gourmet Dining operates the restaurant are subject to local property taxes. Gourmet Dining and the University appeal from the Tax Court's judgment affirming the assessments and the court's order denying their motion for reconsideration. For the reasons that follow, we reverse.

## I.

In 2004, the University established a program to meet the State's need for qualified science and mathematics teachers and scientific researchers, and decided to construct a building on its campus to house the program. The University financed the construction of the building through the New Jersey

Educational Facilities Authority (the Authority), an entity authorized to finance the construction of facilities by public institutions of higher education in this State. See N.J.S.A. 18A:72A-5(k). The University and the Authority entered into a Lease and Agreement, dated December 1, 2005 (the Financing Agreement).

In the Financing Agreement, the Authority agreed to issue tax-exempt bonds and provide the proceeds from the sale of the bonds to the University for the construction of the building. To ensure repayment of the principal and interest on the bonds, the University agreed to convey title to the property to the Authority. In exchange, the Authority agreed to lease the property to the University for a period of thirty years, or until the bonds are fully paid, at which time the Authority would re-convey title to the University.

The University constructed the building with funds provided by the Authority pursuant to the Financing Agreement. The building is known as the New Jersey Center for Science, Technology and Mathematics (NJCSTM). The NJCSTM was ready for use in September 2010. It included space for a full-scale restaurant, which is open to the public.

In June 2010, the University's Board of Trustees (the Board) adopted a resolution, which authorized the Kean University Foundation, Inc. (the Foundation) to complete the restaurant project and engage an experienced

manager to operate the restaurant. The Board's resolution stated that "a minimum of [ten] percent of the restaurant's gross revenues [shall] annually be allocated for scholarship purposes within the Foundation."

In October 2011, the University and the Foundation entered into a Management Agreement, which granted the Foundation the "exclusive right to operate, manage and control" the restaurant for a ten-year period. The Management Agreement authorized the Foundation to subcontract its rights to a person or entity with extensive experience and expertise in the restaurant and catering business.

That same month, the Foundation and Gourmet Dining entered into a Management Subcontract Agreement (MSA), which grants Gourmet Dining "the exclusive right to operate, manage and control" the restaurant facility in the NJCSTM for a ten-year period. The MSA designates Gourmet Dining as the "exclusive manager" of the restaurant, and states that it has responsibility for "all reasonable, necessary and advisable management and operational services[.]"

Under the MSA, Gourmet Dining has sole responsibility for hiring employees and for all expenses related to the restaurant facility, including food costs, inventory expenses, salaries, maintenance, and normal janitorial services. In exchange for these responsibilities, Gourmet Dining agreed to pay

4

the Foundation an annual management fee of $250,000 for the first nine years of the Agreement, and $500,000 for the tenth year. Gourmet Dining also agreed to pay the Foundation 12.5 percent of the gross revenues derived from the operation of the restaurant, which is called Ursino Steakhouse & Tavern (Ursino). The restaurant opened for business in October 2011.

By letter dated August 27, 2012, the Township's Tax Assessor advised Gourmet Dining that the Township would be assessing Gourmet Dining local property taxes for the restaurant facility because it is operating the restaurant on property leased from the University and the subject property is not exempt from local property taxes. The Tax Assessor stated that Gourmet Dining would be required to pay property taxes on the "restaurant portion" of the building for 2011 and 2012.

Gourmet Dining did not challenge the property tax assessments for 2011 or 2012, but later filed petitions of appeal with the Union County Board of Taxation (Tax Board) challenging the assessments for 2013 and 2014. The Tax Board dismissed the petitions, and Gourmet Dining filed timely complaints with the Tax Court, challenging the Tax Board's judgments.

Thereafter, the Township filed a motion for summary judgment, arguing that Gourmet Dining was required to pay local property taxes on the portion of the NJCSTM where it operates the restaurant. Gourmet Dining filed a cross-

5                                      A-4799-17T3

motion for summary judgment and argued that it is exempt from local property taxes on various grounds.  The University joined in the cross-motion.  The Tax Court required that the University and the Authority be joined as necessary parties to the litigation.

Thereafter, the Tax Court filed an order dated March 14, 2018, which granted the Township's motion and denied the cross-motion, for the reasons stated in a written opinion that is reported as Gourmet Dining, LLC v. Union Twp., 30 N.J. Tax 381 (Tax 2018).  Gourmet Dining thereafter filed a motion for reconsideration of the court's order.  The court filed an order dated May 31, 2018, denying reconsideration.  This appeal followed.

II.

On appeal, Gourmet Dining and the University argue that the Tax Court erred by granting the Township's motion for summary judgment.  They contend the court should have granted the cross-motion for summary judgment because the premises in the NJCSTM where Gourmet Dining operates the restaurant are not subject to local property taxes.

We note initially that when reviewing a trial court's order granting or denying summary judgment, we apply the same standard that governs the trial court.  Lee v. Brown, 232 N.J. 114, 126 (2018) (citing Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 349-50 (2016)).  Summary judgment shall be

granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  R. 4:46-2(c).  Here, the material facts are not in dispute, and the question raised on appeal is whether the court erred by finding as a matter of law that the property at issue is subject to local property tax.

We review the trial court's legal determination de novo.  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  In doing so, we owe the trial court no deference on its "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty v. Twp. Comm., 140 N.J. 366, 378 (1995).

Gourmet Dining and the University first argue that the premises in the NJCSTM where the restaurant operates are exempt from local property taxes under N.J.S.A. 54:4-3.3.  The statute provides in pertinent part that the property of the State, its counties and municipalities, and their agencies and authorities, are exempt from local property taxes when the property is "used for public purposes."  Ibid.

The statute does not define the term "used for public purposes," but the statutory language requires "something more than ownership."  Cty. of Bergen v. Borough of Paramus, 79 N.J. 302, 306 (1979).  "[I]n addition to public

ownership there must be public use." Id. at 307. Our Supreme Court has explained that:

> [t]he concept of public purpose is a broad one. Generally speaking, it connotes an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government. Moreover, it cannot be static in its implications. To be serviceable it must expand when necessary to encompass changing public needs of a modern dynamic society. Thus it is incapable of exact or perduring definition. In each instance where the test is to be applied the decision must be reached with reference to the object sought to be accomplished and to the degree and manner in which the object affects the public welfare.
>
> [City of Newark v. Essex Cty. Bd. of Taxation, 54 N.J. 171, 187 (1969) (quoting Roe v. Kervick, 42 N.J. 191, 207 (1964)).]

Here, the Tax Court correctly found that the subject property falls within the purview of N.J.S.A. 54:4-3.3 because it is either the University's or the Authority's property.[1] Gourmet Dining, 30 N.J. Tax at 410. The court found, however, that Gourmet Dining and the University failed to establish the property was used for "public purposes" in the relevant tax years. Ibid. The

---

[1] We note that the University's agreement with the Authority required the University to transfer title to the NJCSTM to the Authority, and the Authority would lease the property to the University. For reasons not clear from this record, the University did not transfer title to the Authority until 2015. In either case, the subject property is owned by either a State University or the Authority.

court essentially found that the evidence shows that the subject property is being used for a private, rather than a public purpose. We disagree with the court's conclusion.

In a certification submitted to the Tax Court, Philip Connelly, the University's Vice President for Administration and Finance and Executive Vice President of Operations, stated that the NJCSTM building was intended and ultimately designed to be a visual landmark, that would provide space for many of the University's needs. He stated that the building was intended to show that the University is "a forward-looking, world-class institution with state-of-the-art facilities[.]"

Connelly also asserted that the Board's goals for the restaurant "were multi-faceted." He stated the University wanted to have a restaurant that could generate income for its scholarship programs, and an in-house caterer for events that required more upscale food than its dining services customarily offer. He explained that presence of "a relatively upscale and critically-acclaimed restaurant facility at the NJCSTM would serve as a visible sign to the wider public of [the University's] emergence as [a] forward-thinking, top-notch university with state-of-the-art facilities."

Connelly further commented that since the restaurant began operations in December 2011, it has generated more than $377,000 for scholarships the

A-4799-17T3

Foundation has awarded to University students. The restaurant provided more than $134,000 in 2012 and more than $128,000 in 2013 for the scholarship programs. Connelly stated, "These are significant amounts, and the money the restaurant has generated for [the University's] scholarships has enabled [the University] to attract quality students who otherwise may not be able to afford to attend [the University], and who are an asset to [the University] academically, among other ways."

Connelly also stated that the restaurant has been "a valuable tool" for communicating with the public "about its successes and the opportunities it offers in order to attract quality students." He noted that the restaurant had received critical acclaim in certain publications with wide circulation, thereby "garnering attention for [the University] as well."

In addition, Connelly asserted that the restaurant has attracted many visitors to the campus, and these visitors might not otherwise have known of the University. Connelly further commented that the restaurant will purchase produce grown on the University's property, and provide food-scrap waste that will be used in the University's composting laboratory. Faculty and students used the finished compost in on-going research.

Nick Davidson, manager of the restaurant in 2013, also submitted a certification to the trial court, in which he stated that students frequently come

 A-4799-17T3

to the restaurant for lunch and often partake of the "bar menu," which is a less expensive option for students. Parents of the University's students also are regular patrons of the restaurant. Davidson also stated that during his time at the restaurant, about eighty-five percent of its employees were students of the University.

In its opinion on the summary judgment motions, the Tax Court recognized that operating a dining hall, cafeteria, or other food service establishment for students, administrators, and others is a recognized purpose of a public university or college. Gourmet Dining, 30 N.J. Tax at 404. The court noted, however, that Ursino is not one of the six dining service locations available to students or other members of the University community, and the restaurant is not generally available under the University's traditional meal plans. Id. at 403-04.

The court reasoned that Ursino is no different from any other restaurant, bar, or tavern in the Township. We are convinced, however, that the court took an unduly narrow view of the facts. The restaurant is unique because it is located on-campus. The record shows that the University's students and their parents regularly dine at the restaurant. Moreover, the University views the restaurant as an important recruiting tool for students and faculty.

11

Although the restaurant is not part of the University's traditional meal plan, Ursino is different from other restaurants, bars, or taverns in the Township because it provides students, other members of the University community, and visitors to the campus an alternative dining experience. The restaurant offers an alternative approach to on-campus dining, which traditionally has been limited to meal plans and cafeterias. As we noted previously, the concept of a public purpose "must expand when necessary to encompass changing public needs of a modern dynamic society." City of Newark, 54 N.J. at 187 (quoting Roe, 42 N.J. at 207).

The Tax Court also found that although Gourmet Dining pays annual management fees to the Foundation, which are used for University scholarships, the payment of the fees does not warrant the conclusion that the subject property is being used for a public purpose. Gourmet Dining, 30 N.J. Tax at 407. The court stated that a private, for-profit entity should not be entitled to a local property tax exemption merely because part of its gross revenue stream is paid to a public entity and then allocated to that public entity's purpose. Ibid.

However, the record shows that the restaurant is not merely providing a revenue stream to the University that is used for general purposes. The restaurant provides revenues that are specifically earmarked for scholarships

for University students.  Indeed, the Board, in its resolution authorizing the Foundation to complete the restaurant project at the NJCSTM, expressly required that at least ten percent of the restaurant's revenues must be allocated to University scholarships.  The Foundation's use of the revenue derived from the restaurant for scholarships provides further support for the conclusion that the subject property is being used for a public purpose.

The Tax Court also rejected the contention that the use of the subject property is for a public purpose because the University claims the restaurant raises the University's public profile.  Id. at 408, 410.  In doing so, the court erred by substituting its judgment for the University's Board, which believes that having a critically-acclaimed, upscale restaurant on campus enhances the public's perception of the University as a forward-looking institution, and thereby serves as an important recruiting tool for students and faculty.

Furthermore, in determining whether the subject premises are used for a public purpose, the Tax Court gave little weight to the evidence showing that in 2013, approximately eighty-five percent of the restaurant's employees were University students. The court also discounted the evidence that the restaurant will use produce grown on the University's property and will provide compostable waste for the University's science program, where it will be used for research by faculty and students.

Standing alone, each of these factors would not be sufficient to establish that the property is being used for a public purpose; however, when all of the relationships between the restaurant and the University are considered, they warrant the conclusion that the subject property is being used for a public purpose. We therefore conclude the subject property is exempt from local property taxation under N.J.S.A. 54:4-3.3.

III.

Gourmet Dining and the University further argue that the Tax Court erred by finding that Gourmet Dining is subject to local property taxes under N.J.S.A. 54:4-2.3. The statute provides in pertinent part that

> [w]hen real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.
>
> [Ibid.]

Here, the court found that the Township had established that the MSA is "functionally a lease." Gourmet Dining, 30 N.J. Tax at 424. Gourmet Dining and the University contend, however, that the evidence does not support that conclusion.

"[A] lease is a grant of exclusive possession to use the land for any lawful purpose, subject to reservation of a right of possession in the landlord

14

for any purpose or purposes 'not inconsistent with the privileges granted the tenant.'" Sandyston Twp. v. Angerman, 134 N.J. Super. 448, 451 (App. Div. 1975) (quoting 3 Thompson on Real Property § 1032 (1959)); see also Thiokol Chem. Corp. v. Morris Cty. Bd. of Taxation, 41 N.J. 405, 417 (1964). Determining whether an agreement is a lease depends upon "the legal effect of its provisions." Angerman, 134 N.J. Super. at 451.

"The difference between a lease and license or similar limited status . . . is that a lease gives exclusive possession of the premises against all the world, including the owner, while a license confers a privilege to occupy under the owner." Thiokol Chem. Corp., 41 N.J. at 417. "A license or similar status is generally revocable at the pleasure of the owner and gives occupancy so far as necessary to engage in the agreed acts or the performance of agreed services and no further," whereas "a lease gives the right of exclusive possession for all purposes not prohibited by its terms." Ibid.

As we have explained, in the Management Agreement, the University granted the Foundation "the exclusive right to operate, manage and control . . . the Facility," which is defined as the restaurant and catering operations located in the NJCSTM. The Management Agreement grants the Foundation the "exclusive right to operate, manage and control" the restaurant, not the property.

15                                    A-4799-17T3

Similarly, in the MSA, the Foundation granted Gourmet Dining the "exclusive right to operate, manage and control" the Facility, which is defined as the restaurant and catering operations in the NJCSTM. The MSA does not expressly grant Gourmet Dining a possessory interest in the property as lessee. As we have noted, the MSA is an agreement to manage and operate the restaurant and the catering operations on the property.

Furthermore, the MSA is for a term of ten years, unless it is terminated earlier for cause. Under the MSA, Gourmet Dining is required to pay annual management fees, but the MSA does not refer to the payments as rent. These and other provisions of the MSA show that the parties intended the agreement to be one for the management and operation of the restaurant, rather than a lease of the property.

Indeed, there is no provision in the MSA that expressly grants Gourmet Dining a possessory interest in the premises, as lessee. Had the parties intended to create a landlord-tenant relationship, they could readily have done so. We therefore conclude that the evidence does not support the Tax Court's conclusion that Gourmet Dining has the "functional" equivalent of a lease of the subject property. The Agreement is one for the management and operation of a restaurant, not a lease.

IV.

Gourmet Dining and the University further argue that the Tax Court erred by finding the property is not exempt from taxation under N.J.S.A. 54:4-3.6.  This statute provides in pertinent part, that

> [t]he following property shall be exempt from taxation under this chapter: all buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt[.]
>
> [Ibid.]

The Tax Court determined that Gourmet Dining had a leasehold interest in the restaurant space, which was not exempt from taxation under the statute.  Gourmet Dining, 30 N.J. Tax at 413.  It is undisputed that the property is part of the University and Gourmet Dining is a profit-making entity.

However, as we have determined, Gourmet Dining is entitled to an exemption from property taxes under N.J.S.A. 54:4-3.3 because it is using the University's property for a public purpose.  Moreover, as we have found, the MSA is an agreement to manage and operate the restaurant, not a lease.  Therefore, Gourmet Dining is not subject to local property taxation under N.J.S.A. 54:4-3.6.

17

V.

Gourmet Dining and the University also contend that the subject premises are exempt from local property taxes under N.J.S.A. 18A:72A-18 because the NJCSTM, including the restaurant space therein, is an Authority "project" and Gourmet Dining is the Authority's "agent." The Authority's enabling statute provides in pertinent part that "neither the [A]uthority nor its agent shall be required to pay any taxes . . . in respect of a project . . . acquired or used by the [A]uthority or its agent[.]" N.J.S.A. 18A:72A-18.

The Tax Court found the evidence does not establish that by managing and operating the restaurant, Gourmet Dining was acting as the Authority's "agent." Gourmet Dining, 30 N.J. Tax at 418. The court stated that there was "no relationship, contractual or otherwise, between Gourmet Dining and [the Authority]" and there was no indication "that any third party relied on any alleged apparent authority they perceived Gourmet Dining to possess on behalf of [the Authority]." Ibid.

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." Sears Mortg. Corp. v. Rose, 134 N.J. 326, 337 (1993). An agency relationship also may be created if a third party relies on one party's "apparent authority" to act on behalf of the principal. Id. at 338. The court

A-4799-17T3

correctly determined that here, there was no agency relationship between Gourmet Dining and the Authority.

Gourmet Dining and the University note that in the Financing Agreement, the Authority authorized the University to construct and develop the NJCSTM building. They contend that under the Financing Agreement, the University acted as the Authority's "agent."

The Authority may have designated the University as its agent for the purpose of constructing the building, but the evidence does not support the conclusion that Gourmet Dining was acting as the Authority's agent in its management and operation of the restaurant. The Tax Court correctly found a reasonable fact finder could not infer that in its management and operation of Ursino, Gourmet Dining was acting as an agent for the Authority. Gourmet Dining, 30 N.J. Tax at 418.

Reversed and remanded for entry of an order granting summary judgment in favor of Gourmet Dining and the University.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION