SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Gourmet Dining, LLC v. Union Township** **(A-8-19) (083146)**

**Argued March 17, 2020 -- Decided June 30, 2020**

**LaVECCHIA, J., writing for the Court.**

The issue in this appeal is whether a high-end restaurant operated by a for-profit entity but housed in a building on the Kean University campus qualifies for exemption from local property taxation.

Under the State Constitution, all real property within New Jersey is subject to taxation unless it qualifies for a statutory exemption. N.J.S.A. 54:4-3.3 exempts from taxation property belonging to the State, counties, or municipalities, or their agencies and authorities, that is used for a public purpose. N.J.S.A. 54:4-3.6, in turn, exempts certain property of various non-profit organizations, including: "all buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation."

The Legislature has also created limitations on the otherwise exempt status of property. N.J.S.A. 54:4-2.3 provides that real property entitled to tax exemption loses its exemption when leased to a person or entity whose property is not exempt. And, under N.J.S.A. 54:4-1.10, an arrangement that is not technically a lease but operates as one is subject to taxation, just as a leasehold estate would be under N.J.S.A. 54:4-2.3.

Gourmet Dining, LLC, owned and operated a fine dining restaurant named Ursino in a Kean University building. In October 2011, the Kean University Foundation, Inc., and Gourmet Dining entered into a Management Subcontract Agreement (MSA), which conferred on Gourmet Dining the exclusive right to operate, manage, and control Ursino. Gourmet Dining agreed to pay the Foundation an annual "management fee" and a percentage of Ursino's gross revenue.

The restaurant began operation in late October 2011. In August 2012, Union Township issued a letter notifying Gourmet Dining that it would receive a tax bill for the last two months of the 2011 tax year and the entirety of the 2012 tax year. Gourmet Dining did not challenge those initial assessments but did challenge the 2013 and 2014 tax assessments. It ultimately appealed to the Tax Court.

1

The Tax Court granted summary judgment in favor of Union Township. 30 N.J. Tax 381, 391 (Tax 2018). The court first held that N.J.S.A. 54:4-3.3 applied because the University is a State governmental entity and the building constitutes governmental property. Id. at 402. Concluding that Gourmet Dining had not established that the subject property is used for a public purpose pursuant to N.J.S.A. 54:4-3.3, or that its actual use of the property was for "colleges, schools, academies or seminaries" as required by N.J.S.A 54:4-3.6, the court held that Gourmet Dining was not entitled to tax exemption under either provision. Id. at 410-13. And reasoning that the "rights, powers, and obligations conferred" through the MSA demonstrate that that agreement -- even if not denominated a lease by the parties -- is "a lease for legal purposes," the Tax Court found the property taxable under N.J.S.A. 54:4-2.3 and N.J.S.A. 54:4-1.10. Id. at 424-26.

The Appellate Division reversed, relying on a holistic view of the following facts: the restaurant is located on-campus; University students and their parents regularly dine there; the restaurant provides students and members of the University community "an alternative dining experience"; Gourmet Dining's annual management fees are used for scholarships; the University's Board determined "that having a critically acclaimed, upscale restaurant on campus enhances the public's perception of the University as a forward-looking institution, and thereby serves as an important recruiting tool"; many of the restaurant's employees are students; and the restaurant uses produce grown on the University grounds and provides the University with compostable waste. 459 N.J. Super. 323, 327, 334-35 (App. Div. 2019). The panel also rejected the Tax Court's conclusion that Gourmet Dining is "the 'functional' equivalent" of a lessee. Id. at 337.

The Court granted the Township's petition for certification. 239 N.J. 521 (2019).

**HELD:** The arrangement by which Gourmet Dining operates Ursino is taxable as a lease or lease-like interest. The public-benefit-oriented exemption provisions in issue were not intended to exempt the for-profit operator of a high-end, regionally renowned restaurant situated on a college campus, when the overriding purpose of this commercial endeavor is focused on profitmaking. Gourmet Dining, as the exclusive operator and manager of this restaurant establishment, must bear its fair share of the local real property tax burden.

1. Both the Tax Court and the Appellate Division recognized that the subject property is on State property and, as such, falls within the purview of N.J.S.A. 54:4-3.3. (p. 21)

2. The Court rejects the argument, based on the punctuation of N.J.S.A. 54:4-3.3, that demonstration of a "public purpose" is unnecessary here. The State Constitution prohibits the donation of state property for private interests, and the Court has established a two-part test for determining whether a donation to a private entity violates the Constitution because it does not serve a public purpose. A court must first determine whether the provision of land or financial aid is for a public purpose, and second, whether the means to accomplish that public purpose are consonant with it. The latter

2

examination is understood as having two parts: whether the transaction is contractual and involves some obligation on the part of the private entity that is intimately tied to fulfilling the public purpose, and whether the accomplishment of the public purpose is the paramount factor in the contract with any private advantage being merely incidental or subordinate. Because an obligation of public purpose use already exists for State property, there was no need to mention the requirement in section 3.3's first clause. Further, the public purpose assessment would remain integral to the determination of whether tax exemption would apply under N.J.S.A. 54:4-2.3 or -1.10. (pp. 21-25)

3. The Appellate Division's holistic approach to the public purpose inquiry was mistaken. The accomplishment of the public purpose must be the paramount factor in an arrangement with a private entity's use of public property. For a tax exemption to apply, any private advantage must be incidental or subordinate. Here, that is not so. The Court stresses that it is not assessing the University's exercise of its authority, but rather determining whether the legislative purpose in crafting the exemption from taxation in N.J.S.A. 54:4-3.3 anticipated the circumstances here -- the University contracting out the establishment and operation of an upscale for-profit commercial restaurant to compete with other local commercial restaurants that pay their fair share of local property taxes. The Court agrees with the Tax Court that Gourmet Dining's interest in the property is not tax exempt under that provision. (pp. 25-29)

4. The Court rejects Gourmet Dining's claim that it is merely a manager and operator of the restaurant facility, not a tenant or lessee. Because N.J.S.A. 54:4-1.10 so clearly intends to cover user arrangements such as these, the Court relies on the Tax Court's analysis of that statute's applicability here. Ursino is taxable under N.J.S.A. 54:4-1.10, through which the Legislature indicated that it did not wish for the public at large to underwrite the local tax obligation of the private operator of a for-profit commercial establishment on public property. (pp. 30-31)

5. Nor is Gourmet Dining exempt from taxation under N.J.S.A. 54:4-3.6. Gourmet Dining is a for-profit entity, and the restaurant, as contemplated by the MSA, is intended to make a profit. Gourmet Dining receives the gross revenue and, from that, it pays operating expenses -- which notably expressly reference payment of local taxes -- and fees to the Foundation. As the Tax Court reasoned, the profit, after all expenses are paid, goes to Gourmet Dining. Thus, Gourmet Dining's use of the subject property does not constitute a use for the "college" but rather for itself. (pp. 31-32)

**The judgment of the Appellate Division is REVERSED and the judgment of the Tax Court is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE LaVECCHIA's opinion. JUSTICE TIMPONE did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-8 September Term 2019

083146

Gourmet Dining, LLC,

Plaintiff-Respondent,

v.

Union Township,

Defendant-Appellant,

and

New Jersey Educational
Facilities Authority,

Defendant,

and

Kean University,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
459 N.J. Super. 323 (App. Div. 2019).

Argued                          Decided
March 17, 2020              June 30, 2020

Robert F. Renaud argued the cause on behalf of
appellant (Renaud DeAppolonio, attorneys; Robert F.
Renaud and Adam J. Colicchio, on the briefs).

1

David B. Wolfe argued the cause on behalf of respondents (Skoloff & Wolfe, attorneys; David B. Wolfe, Robert F. Giancaterino, and Rebecca L. Hutcheon, on the brief).

Richard F. Ricci argued the cause on behalf of amici curiae, Rutgers, The State University of New Jersey, Montclair State University, Rowan University, Stockton University, The College of New Jersey, and New Jersey Institute of Technology (Lowenstein Sandler, attorneys; Richard F. Ricci and Zachary L. Berliner, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

The issue in this appeal is whether a high-end restaurant operated by a for-profit entity but housed in a building on the Kean University campus qualifies for exemption from local property taxation.

When the restaurant became operational, the operator, Gourmet Dining, LLC (Gourmet Dining), was named as the taxpayer by Union Township, which issued a tax assessment on the belief Gourmet Dining had a taxable leasehold interest. Gourmet Dining contested the assessment, claiming exemption from taxation under N.J.S.A. 54:4-3.3 (addressing State and other public property used for public purposes), and N.J.S.A. 54:4-3.6 (exempting property of colleges and other nonprofit organizations), among other bases no longer pertinent to this appeal. Bolstered by Kean University (the University),

2

Gourmet Dining also advanced public purpose arguments emphasizing the University's interest in having the restaurant on its campus. The Tax Court rejected those arguments, but the Appellate Division found accumulated in them a basis to permit the exemption.

In this appeal, we are asked to evaluate whether the assertions by Gourmet Dining and the University satisfy the statutory standards for exemption from local property taxation for the operator of the facility. For the reasons expressed, we reverse the Appellate Division and reinstate the judgment of the Tax Court, which found the arrangement taxable as a lease or lease-like interest. We further hold that the public-benefit-oriented exemption provisions in issue were not intended to exempt the for-profit operator of a high-end, regionally renowned restaurant situated on a college campus, when the overriding purpose of this commercial endeavor is focused on profitmaking. The Tax Court properly held that Gourmet Dining, as the exclusive operator and manager of this restaurant establishment, must bear its fair share of the local real property tax burden.

I.

Certain tax statutes provide the framework for understanding this dispute.

3

Under our State Constitution, all real property within New Jersey is subject to taxation unless it qualifies for a statutory exemption. N.J. Const. art. VIII, § 1, ¶¶ 1(a) and 2; see also N.J.S.A. 54:4-1 ("All property real and personal within the jurisdiction of this State not expressly exempted from taxation or expressly excluded from the operation of this chapter shall be subject to taxation annually under this chapter.").

The Legislature has created numerous exemptions from local taxation, and the two that are pertinent to this appeal are found in N.J.S.A. 54:4-3.3 and -3.6.

N.J.S.A. 54:4-3.3 addresses the exemption for public property. It provides in pertinent part that

> the property of the State of New Jersey; and the property of the respective counties and municipalities, and their agencies and authorities, school districts, and other taxing districts used for public purposes, which public purposes include the use for stadiums and arenas, or for the preservation or exhibit of historical data, records or property; school district property which is leased to a nonprofit organization which is exempt from taxation under N.J.S.A. 54:4-3.6, for use by that organization in its exempt functions; school district property which is leased to another board of education or governmental agency; and property acquired by any municipality through tax title foreclosure or by deed in lieu of foreclosure, if not used for private purpose, shall be exempt from taxation under this chapter . . . .
>
> [N.J.S.A. 54:4-3.3.]

4

N.J.S.A. 54:4-3.6, in turn, exempts certain property of various non-profit organizations, including:

> all buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt.

The Legislature has also created limitations on the otherwise exempt status of property. In that respect, N.J.S.A. 54:4-2.3 and N.J.S.A. 54:4-1.10 are relevant in this appeal.

N.J.S.A. 54:4-2.3 provides that real property entitled to tax exemption loses its exemption when leased to a person or entity whose property is not exempt. Under that statute,

> [w]hen real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate.

> [N.J.S.A. 54:4-2.3.]

With the subsequent enactment of a related provision, codified at N.J.S.A. 54:4-1.10, the Legislature eliminated for tax exemption purposes "the artificial distinction between leased property and property used under a non-lease arrangement." Dep't of Envtl. Prot. v. Township of Upper Freehold, 31

5

N.J. Tax 230, 240 (Tax 2019) (quoting <u>N.J. Highway Auth. v. Town of</u>

<u>Bloomfield</u>, 8 N.J. Tax 637, 642 (Tax 1987)).  N.J.S.A. 54:4-1.10 provides:

> When real property which is exempt from taxation is used by a private party in connection with an activity conducted for profit, and the use does not render the real property taxable pursuant to section 1 of <u>L.</u> 1949, <u>c.</u> 177 (N.J.S.A. 54:4-2.3) or otherwise, the real property shall be assessed and taxed as real property of the private party.  The private party is subject to liability for taxation to the same extent as though he owned the property or any portion thereof, unless the owner consents to the taxation thereof.  For purposes of this act, "use" means the right or license, express or implied, to possess and enjoy the benefits from any real property, whether or not that right or license is actually exercised.

Thus, according to New Jersey's statutory plan addressing tax exemptions for real property, an arrangement that is not technically a lease but operates as one is subject to taxation pursuant to N.J.S.A. 54:4-1.10, just as a leasehold estate would be subject to taxation under N.J.S.A. 54:4-2.3.  <u>See</u> <u>State v. Eatontown</u> <u>Borough</u>, 366 N.J. Super. 626, 632-33 (App. Div. 2004) ("[T]ax liability is imposed on the <u>lessee</u> (N.J.S.A. 54:4-2.3) or the 'private party' <u>user</u> of the premises (N.J.S.A. 54:4-1.10).").

We now turn to the circumstances that gave rise to this appeal.

II.

A.

In resolving this matter on a summary judgment basis, the Tax Court summarized the steps that led to the establishment of the restaurant at the heart of this dispute. We draw extensively from that explication of the financial and other arrangements between the parties.

Gourmet Dining is "a restaurant, food service, dining operator, and manager," that, during the tax years in issue, owned and operated a fine dining restaurant named Ursino (the subject property or the property). Gourmet Dining, LLC v. Union Township, 30 N.J. Tax 381, 391 (Tax 2018). The subject property takes up approximately 6.4% of the University's 110,000 square foot New Jersey Center for Science, Technology, and Mathematics Building (STM Building).[1] Ibid. Construction of that educational facility was financed through tax-exempt bonds issued by the New Jersey Educational Facilities Authority (NJEFA), a State "instrumentality[] authorized to borrow money and issue bonds" to finance construction projects for educational institutions within the state. Id. at 391-92; see also N.J.S.A. 18A:72A-3

---

[1] Kean University is the owner of Block 101, Lot 4.0103 on the tax map of Union Township, commonly known as 1075 Morris Avenue. See Gourmet Dining, 30 N.J. Tax at 391. The STM Building is located on that property.

7

(defining "Educational facility" for purposes of meeting the definition of "project" eligible for NJEFA financing). As this record reveals, the NJEFA owns the STM Building and leases it to the University pursuant to a Lease Agreement dated December 1, 2005.[2] Gourmet Dining, 30 N.J. Tax at 392.

On June 28, 2010, the University's Board of Trustees adopted a Resolution by which the University determined to grant to the Kean University Foundation, Inc.[3] (Foundation), the right to launch a restaurant in a portion of the STM building and to "engage a restauranteur" for the project. Ibid. That Resolution required that "a minimum of 10 percent of the restaurant's gross revenues annually be allocated for scholarship purposes within the Foundation." Ibid.

More than a year later, on October 19, 2011, the University and the Foundation entered into their contractual arrangement regarding this restaurant project, executing an agreement (the Management Agreement) granting the Foundation "the 'exclusive right to operate, manage and control' the subject

---

[2] Although the University and NJEFA entered into the Lease Agreement on December 1, 2005, the University did not transfer title for the land on which the building is located to the NJEFA until 2015. Gourmet Dining, 30 N.J. Tax at 392 n.1.

[3] The Foundation is described in the record as "a non-profit, 501(c)(3) organization that receives, invests and administers private support for Kean University." The Foundation also manages and awards scholarships for students to attend the University.

8

property." Ibid. The Management Agreement also allowed the Foundation to subcontract its management rights "to a manager with extensive experience and expertise in the management and operation of various restaurant and catering businesses, with [the] University's written consent." Ibid.

On the same day in October 2011, the Foundation and Gourmet Dining entered into a Management Subcontract Agreement (MSA); notably, the MSA conferred on Gourmet Dining the exclusive right to operate, manage, and control Ursino -- the restaurant to be located within the STM Building. Id. at 392-93. Gourmet Dining thus became the exclusive manager of the restaurant, responsible for all management and operational services. Id. at 393. Gourmet Dining agreed to pay the Foundation an annual "management fee" of $250,000 per year for nine years and $500,000 in the tenth year. Ibid. Gourmet Dining also agreed to pay the Foundation 12.5% of Ursino's gross revenue, designated as an operations fee to be paid quarterly. Ibid.

Once outfitted, furnished, and staffed, the restaurant began operation in late October 2011. In August 2012, Union Township issued a letter notifying Gourmet Dining that it would receive a tax bill for the Ursino restaurant facility, citing N.J.S.A. 54:4-2.3, based on the Township's view that Gourmet

Dining was a lessee.[4]  Ibid.  The assessment was imposed for the last two

months of the 2011 tax year and the entirety of the 2012 tax year.  Ibid.

Gourmet Dining did not challenge those initial assessments.  However, it

brought a challenge to the 2013 and 2014 tax assessments before the Union

County Board of Taxation.  Id. at 394.  After those proved unsuccessful in

securing relief, Gourmet Dining appealed to the Tax Court.  Ibid.

Defendant Union Township filed a summary judgment motion seeking

dismissal of the action, and Gourmet Dining filed a cross-motion for judgment.

Ibid.  Thereafter, by order of the Tax Court, the NJEFA and the University

were joined as necessary parties.  Ibid.

B.

In a detailed opinion, the Tax Court granted the Township's summary

judgment motion and denied Gourmet Dining's and the University's cross-

motions.  Id. at 391.

The Tax Court concluded that the subject property falls within the

jurisdiction of N.J.S.A. 54:4-3.3 because the University is a State

governmental entity and the STM Building constitutes governmental property.

---

[4]  Based on the estimated true market value of the restaurant portion of the
building and applying the Township's ratio of assessed to true value, the local
property assessment for the 2012 tax year was $300,800.  Gourmet Dining, 30
N.J. Tax at 393-94.  The land was valued at $50,000 and improvements at
$250,800.  Id. at 394.

10

Id. at 402. On the other hand, however, the court noted that "it is undisputed that Gourmet Dining is a for-profit corporation, and its operation and management of Ursino are conducted for-profit." Ibid. The court then analyzed whether "Gourmet Dining's use, possession, and occupancy of the subject property as a restaurant fulfills a statutory purpose afforded to [the University]." Ibid. Because it concluded that Gourmet Dining had not established that the subject property is used for a public purpose pursuant to N.J.S.A. 54:4-3.3, the court held that Gourmet Dining was not entitled to local property tax exemption under that provision. Id. at 410.

The court explained Ursino is a for-profit business that, during the tax years in issue, did not operate as a dining hall to serve the University's ancillary function of providing food to its student body, faculty, or administrators. Id. at 406-07. As the court put it,

> Gourmet Dining conceded that during the 2013 and 2014 tax years, Ursino did not participate in, and was not part of, any meal plan offered by Kean to its students, faculty, or administrators. Additionally, Ursino was not identified by Kean's Office of Residence Life as one of the six "dining service locations" available to students or other members of the Kean community. Significantly, Ursino did not accept the students' "Cougar Dollars" or "Flex Dollars" (Kean's student-dining currencies, which offer flexible dining options to students outside of the traditional meal plans), or offer discounts to Kean faculty, administrators, or students. While none of these factors individually are dispositive, they support Union

11

> Township's assertion that Ursino was no different from
> any other restaurant, bar, or tavern in Union Township.
>
> [Id. at 403.]

The court took into consideration the Resolution between the University and the Foundation, which calls for at least ten percent of the restaurant's gross revenues to be annually allocated for student scholarships; however, the court observed that "the Management Agreement between [the University] and the Foundation contains no such provision, and imposes no such obligation or requirement." Id. at 407. Therefore, while the University may have initially expressed an intent to fund scholarships with proceeds from the restaurant, the court did not find that intent "manifested in any contractual provision under either the MSA or the Management Agreement." Ibid.

More fundamentally, the court was not persuaded that tax exemption under N.J.S.A. 54:4-3.3 was envisioned for a private, for-profit entity "simply because part of its gross revenue stream is remitted to a public entity and then allegedly allocated to further the public entity's purpose." Ibid.

To the extent that Gourmet Dining and the University claimed that a public purpose was met because it was the University's decision to have a renowned, high-end eating establishment on campus to raise the public profile of the institution, the court rejected the argument. Id. at 408. The court did not agree that finding the University's decision an inadequate predicate for a

12

tax exemption was tantamount to "interfering with the policy-making and administrative purposes of [a] college." Ibid. (alteration in original). The court stressed that it was not evaluating the validity of the University's internal or administrative processes but was simply determining whether the operation of a for-profit restaurant met the public purpose test for tax exemption purposes. Ibid.

The court also rejected a bevy of arguments advanced to show that the relationship between the Ursino restaurant and the University supported the finding of a public purpose to support tax exemption. The court rejected the claim that a public function is served because Ursino employs students, id. at 408-09, noting that to allow a for-profit business a tax exemption merely for employing students "would eviscerate the current system of local property tax assessments and exemptions," id. at 409. The court also rejected the argument that the restaurant's provision of compostable material to the University and purchase of some produce from a University-operated farm constitute use of the property for a public purpose. Id. at 409-10. The court described this asserted environmental stewardship program as "at best an indirect benefit of arms-length transactions between Gourmet Dining and [the University] for services necessary for the operation of Ursino." Ibid.

13

The Tax Court also addressed the application of N.J.S.A. 54:4-3.6 and concluded that Gourmet Dining failed to demonstrate that its "actual use of the subject property constituted a use for 'colleges, schools, academies or seminaries.'" Id. at 413. The court was unconvinced that this profit-making arrangement met the intendment of that statute, noting that the intent behind operating the restaurant is to generate profit, which generates revenue for Gourmet Dining. Id. at 412. According to the court, "[i]f profit comprises the revenue that remains after all expenses of Ursino's operations are paid, [including the fees it is required to pay the Foundation,] then it must be said that, here, all profit belongs to Gourmet Dining." Id. at 413. Therefore, the court held that Gourmet Dining was not entitled to tax exemption pursuant to N.J.S.A. 54:4-3.6.[5] Ibid.

According to the Tax Court, Gourmet Dining has in essence a leasehold interest in the subject property, and as such, the property is subject to taxation under N.J.S.A. 54:4-2.3. Id. at 424. The court reasoned that the "rights,

_____

[5] The Tax Court also rejected an argument that Gourmet Dining is entitled to tax exemption pursuant to N.J.S.A. 18A:72A-18 as an agent of the NJEFA. Gourmet Dining, 30 N.J. Tax at 420. The court reasoned that the University and the Foundation are not agents of the NJEFA, and, therefore do not qualify for an exemption under that provision, which affords an exemption to a "project or any property . . . used by the authority or its agent." Ibid. (omission in original) (quoting N.J.S.A. 18A:72A-18). This argument is not advanced before our Court.

14

powers, and obligations conferred on the parties" through the MSA demonstrate that that agreement -- even if not denominated a lease by the parties -- is "a lease for legal purposes." Ibid. The court further held that "because Gourmet Dining's use of the subject property failed to satisfy the necessary public purpose requirements, its use of the subject property is subject to taxation under N.J.S.A. 54:4-1.10." Id. at 425-26. In sum, the court found that the relevant "statutes do not sanction the grant of tax exemptions where tax-exempt property is leased by public institutions to private entities for a commercial, profit-generating purpose that is unrelated to the institution's tax-exempt mission." Id. at 425.

The Tax Court thereafter denied a motion for reconsideration that focused on the court's finding that the University and Gourmet Dining were not agents of the NJEFA.

## C.

An appeal was taken, and the Appellate Division reversed the Tax Court's judgment. Gourmet Dining, LLC v. Union Township, 459 N.J. Super. 323, 327 (App. Div. 2019).

The Appellate Division determined that the subject property was exempt under N.J.S.A. 54:4-3.3, stating "when all of the relationships between the restaurant and the University are considered, they warrant the conclusion that

15

the subject property is being used for a public purpose." Id. at 335. The Appellate Division relied on a holistic view of the following facts in reaching its determination, while conceding that no single one standing alone would demonstrate a public purpose: the restaurant is located on-campus; University students and their parents regularly dine at the restaurant; the restaurant provides students and members of the University community "an alternative dining experience"; Gourmet Dining's annual management fees are used for University scholarships; the University's Board determined "that having a critically acclaimed, upscale restaurant on campus enhances the public's perception of the University as a forward-looking institution, and thereby serves as an important recruiting tool"; many of the restaurant's employees are students; and the restaurant uses produce grown on the University grounds and "will provide compostable waste for the University's science program, where it will be used for research by faculty and students." Id. at 334-35.

For similar reasons, the Appellate Division also concluded that Gourmet Dining was not subject to local taxation for the restaurant under N.J.S.A. 54:4-3.6. Id. at 338. And the panel rejected the Tax Court's conclusion that Gourmet Dining is "the 'functional' equivalent" of a lessee of the subject property, reasoning that the provision in the MSA between the Foundation and Gourmet Dining for payment of annual management fees and not rent

demonstrates "that the parties intended the agreement to be one for the management and operation of the restaurant, rather than a lease of the property."[6] Id. at 337.

The Township filed a petition for certification from the Appellate Division's judgment, which we granted. 239 N.J. 521 (2019). We also granted amicus curiae status to a joint group of public institutions of higher education that includes Rutgers, The State University of New Jersey; Montclair State University; Rowan University; Stockton University; The College of New Jersey; and New Jersey Institute of Technology.

III.

The Township argues that the Tax Court properly applied the tax exemption statutes in concluding that the subject property is not exempt and that the Appellate Division erred in stretching the statutes to apply in these circumstances, while ignoring N.J.S.A. 54:4-1.10. The Township emphasizes that this property is being used to generate profit for a private entity and asserts that the University's belief that having an "upscale" and "critically-

---

[6] The Appellate Division agreed with the Tax Court that there was no agency relationship between Gourmet Dining and the NJEFA and that the subject property is therefore not exempt from local property taxation under N.J.S.A. 18A:72A-18. Gourmet Dining, 459 N.J. Super. at 338-39. That issue is not pursued before our Court.

17

acclaimed" restaurant on campus will enhance its image does not transform this for-profit restaurant into a public use.

Gourmet Dining and the University contend that the concept of "public purpose" is broad and dynamic and that tax exemptions for state property are liberally construed. In arguing for affirmance of the Appellate Division's judgment, they contend that the subject property's use falls within the University's broad statutory authority and constitutes a public purpose, regardless of whether the property is operated by a for-profit entity.

Gourmet Dining and the University also continue to maintain that the MSA is not a lease or the functional equivalent of a lease. Moreover, they claim neither N.J.S.A. 54:4-2.3 nor N.J.S.A. 54:4-1.10 applies when the property is utilized for the purpose of the exempt entity.

Amici support Gourmet Dining and the University on their public purpose arguments and also highlight that the plain language and punctuation of N.J.S.A. 54:4-3.3 supports their argument that State property, such as that held by the University, is exempt from local property taxation "regardless of its purpose or use." They point to the semicolon after the first clause, which concludes with the words "New Jersey," and contend that that punctuation

18

signifies that the "public purpose" modifier later in the provision applies only to the later clauses.[7]

## IV.

We begin with the constitutional directive that all real property is subject to local property taxation unless its use has been legislatively exempted. N.J. Const. art. VIII, § 1, ¶¶ 1, 2. As observed by Chief Justice Vanderbilt, government needs taxes to function and "[a]ny impairment of the taxing power affects the lifeblood of government." N.J. Tpk. Auth. v. Washington Township, 16 N.J. 38, 44 (1954). That is especially true for local governments, which are particularly dependent on tax revenue. Borough of Moonachie v. Port of N.Y. Auth., 38 N.J. 414, 423 (1962).

The Constitution's authorization for the legislative creation of tax exemptions contains some restrictions. Township of Holmdel v. N.J. Highway Auth., 190 N.J. 74, 87 (2007) (citing Robert F. Williams, The New Jersey State Constitution 109-15 (1997)). Exemptions may be granted only through "general laws." N.J. Const. art. VIII, § 1, ¶ 2; see N.J. Const. art. IV, § 7, ¶ 9(6) (prohibiting special laws on taxation). And our case law recognizes that

---

[7] This argument was advanced by Gourmet Dining and the University in their brief to the Appellate Division; however, the court did not address it, going directly to the public purpose debate and ruling in favor of Gourmet Dining and the University on that basis.

19

the exemption must be based on the property's use, not on the property owner's identity. Township of Holmdel, 190 N.J. at 87. Within those constrictions, the Legislature has created and refined laws allowing for exemption of certain property from local taxation. Several such laws are the focus of this appeal.

When courts are called on to interpret tax exemption statutes, the general standards for statutory interpretation are followed. Ibid. (citing Walter Reade, Inc. v. Dennis, 36 N.J. 435, 440 (1962)). The paramount goal is to discern and implement legislative intent. See DiProspero v. Penn, 183 N.J. 477, 492 (2005). In performing that task, we also adhere to the longstanding principle that tax exemption statutes in favor of nongovernmental actors are subject to strict construction. See, e.g., Int'l Sch. Servs., Inc. v. West Windsor Township, 207 N.J. 3, 15 (2011); Highway Auth., 190 N.J. at 88. And, that it is the burden of the party seeking the exemption to prove that the bases for it are established. Int'l Sch. Servs., 207 N.J. at 15. Public policy calls for the public tax burden "to be borne fairly and equitably." Ibid.

As this matter comes on appeal from summary judgment, that standard guides this appeal. See R. 4:46-2; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We turn, necessarily, to the application of the tax exemption statutes to Gourmet Dining.

20

V.

One of Gourmet Dining's claims for tax exemption relies on N.J.S.A. 54:4-3.3, which provides that

> the property of the State of New Jersey; and the property of the respective counties and municipalities, and their agencies and authorities, school districts, and other taxing districts used for public purposes . . . shall be exempt from taxation under this chapter . . . .

Both the Tax Court and the Appellate Division recognized that, whether the underlying real estate was viewed as owned by the NJEFA or the University, the subject property is on State property and, as such, "falls within the purview of N.J.S.A. 54:4-3.3." Gourmet Dining, 459 N.J. Super. at 332. The two courts differed on whether Gourmet Dining, bolstered by the University, satisfactorily demonstrated that the property was used for a public purpose. Ibid.

Before reviewing the competing arguments on public purpose in these circumstances, we dispense with a legal argument that demonstration of a "public purpose" is unnecessary here.

A.

The contention is that N.J.S.A. 54:4-3.3 makes the consideration of public purpose an irrelevant consideration for tax-exemption purposes because Ursino is located on State property. To support that proposition, Gourmet

21

Dining and the University, in their briefing to the Appellate Division, amplified by amici, rely on the text and punctuation of the first quoted clause of the statutory provision.

As the argument goes, the semi-colon after "New Jersey" precludes application of the second clause's modifier about property being required to be used for public purposes for exemption to be triggered. While the punctuation reading has superficial attraction, the argument fails when considered in its larger context.

All property of the State is subject to use for public purposes by virtue of the State Constitution's prohibition against the donation of state property for private interests. See N.J. Const. art. VIII, § 3, ¶ 3. Public property is to be used for public purposes and, to cement that obligation, the Constitution mandates that "[n]o donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever." Ibid. The "provision was added to the Constitution when it was amended in 1875 because of 'a number of abusive practices that occurred during the nineteenth century when railroads and other private corporations were provided direct public assistance to the serious detriment of the taxpayers under the guise of "encouraging development."'" State Bar Ass'n v. State, 382 N.J. Super. 284, 318 (Ch. Div.

22

2005) (quoting <u>Davidson Bros., Inc. v. D. Katz & Sons, Inc.</u>, 121 N.J. 196, 217 (1990) (quoting, in turn, <u>Roe v. Kervick</u>, 42 N.J. 191, 212 (1964))). Based upon that provision, this Court recognizes as a "fundamental doctrine" that the State is prohibited from lending, "directly or indirectly, or loaning, giving or donating its money or <u>property</u> or that of its subdivisions to or for the use of an individual, association or corporation for private purposes." <u>Roe</u>, 42 N.J. at 207 (emphasis added).

The seminal case of <u>Roe</u> articulated what passes for a public purpose: a public purpose is "an activity which serves as a benefit to the community as a whole, and which, at the same time is directly related to the functions of government." <u>Ibid.</u> In <u>Roe</u>, our Court established a two-part test for determining whether a donation to a private entity violates the Constitution because it does not serve a public purpose. <u>Ibid.</u>; <u>Bryant v. City of Atlantic City</u>, 309 N.J. Super. 596, 612 (App. Div. 1998); <u>State Bar Ass'n</u>, 382 N.J. Super. at 318. Stated simply, a court must first determine whether the provision of land or financial aid is for a public purpose, and second, whether the means to accomplish that public purpose are consonant with it. <u>Bryant</u>, 309 N.J. Super. at 612 (citing <u>Roe</u>, 42 N.J. at 212). The latter examination is understood as having two parts: "whether the transaction is contractual and involves some obligation on the part of the private entity that is intimately tied

23

to fulfilling the public purpose[, and] whether the accomplishment of the public purpose is the <u>paramount</u> factor in the contract with any private advantage being merely incidental or subordinate." <u>State Bar Ass'n</u>, 382 N.J. Super. at 318 (emphasis added).

An obligation of public purpose use already exists for State property. The argument that no public purpose examination is required under N.J.S.A. 54:4-3.3 for State land under any circumstance flies in the face of the fundamental doctrine recognized in <u>Roe</u>. The public purpose requirement is carried forward when public property is turned over to private hands, otherwise the State risks a Donation Clause violation. There was no need to mention the requirement in section 3.3's first clause.

This textual argument that no public purpose showing is necessary, which the Appellate Division did not address,[8] is unpersuasive when viewed in the larger picture, and it fails to assist in the question before the Court for this, and a second, reason.

The amici who emphasized this argument conceded, during oral argument, that the point was inconclusive because if State property is leased,

_____

[8] Indeed, we note that in addressing what the statute means when it imposed a standard of "used for public purposes," the Appellate Division here adverted to the same <u>Roe</u> standard in connection with its public purpose assessment. <u>Gourmet Dining</u>, 459 N.J. Super. at 331.

24

or similarly allowed to be used by a private party, that triggers an analysis under N.J.S.A. 54:4-2.3 or -1.10.  Thus, a public purpose assessment would remain integral to the determination of whether tax exemption would apply.  If the public purpose test is not satisfied, <u>the user of the property is taxed</u>, as provided by either of those statutes, <u>not the State</u>.

We return then to the public purpose debate in this matter.

### B.

### 1.

Both the Tax Court and Appellate Division assessed the various bases advanced by Gourmet Dining and the University to support their argument that operation of Ursino serves a public purpose:  (1) the restaurant is a public dining establishment that may be used by University students, their families, faculty and administrators; (2) a portion of gross revenue from the restaurant's operations are paid to the Foundation, which will provide scholarships to students; (3) the acclaimed restaurant raises the University's profile; (4) the restaurant employs students; and (5) the restaurant has an arrangement, presumed by the Tax Court to be an arms-length transaction in the absence of any countervailing showing, that involves its use of some produce grown on a farm owned by the University and its provision of compostable waste to the

25

University, thus promoting the University's mission of environmental stewardship.

The Tax Court rejected those bases in finding that a public purpose was not sufficiently supported on this record because, after engaging in detailed comparisons of each proffered reason to factual settings and holding of prior cases, all came up short. Gourmet Dining, 30 N.J. Tax at 403-10. The Appellate Division then examined those considerations and rightfully acknowledged that none individually met the "used for public purposes" test that has been deployed in tax exemption cases before and which traces back to Roe. Gourmet Dining, 459 N.J. Super. at 331-35.

However, the Appellate Division found that, in considering the sum of those factors, an overall public purpose is demonstrated. Id. at 335. In its assessment, the court expressed the view that it is incumbent on courts not to substitute their judgment for that of the University Board when it determined that the best interests of the University were advanced by having a "critically acclaimed, upscale restaurant on campus [to] enhance[] the public's perception of the University as a forward-looking institution," which enhanced recruiting of students and faculty. Ibid. The Appellate Division found persuasive the fact that the University considered its STM Building a visual landmark and that the restaurant housed in it would enhance the University's public profile.

26

The court also noted that the renowned, upscale restaurant would generate a stream of income for scholarships. And, although the restaurant is not associated with any meal plan or dining arrangement with the University, the Appellate Division also took into account that students take advantage of the restaurant's lower cost bar fare, that parents patronize it, and that the restaurant employed many students and helped promote the University's environmental stewardship mission.

In our view, the Appellate Division's approach was mistaken.

2.

Roe instructs that the accomplishment of the public purpose must be the paramount factor in an arrangement with a private entity's use of public property. For a tax exemption to apply, any private advantage must be incidental or subordinate. Here that is not so.

The commercial success of this competitive high-end restaurant located on the University's campus is the paramount factor in this arrangement. Providing food services for students, or even faculty or administrators, was not its key purpose. Indeed, having this eating establishment was not even promoted as a form of convenience for students and researchers at the STM Building, or the University generally. Cf. Blair Acad. v. Blairstown Township, 95 N.J. Super. 583, 590 (App. Div. 1967) ("The use of a catering

27

system to feed the students and faculty of this boarding school cannot be regarded as a commercial activity or business venture of the school[;] . . . [i]t has been found expedient by the management of the school to have such a private caterer, in lieu of providing its own personnel to furnish this necessary service."). Had the running of this restaurant been tied to the University's provision of dining services in some fashion (other than the happenstance of students patronizing the venue on occasion, as might any member of the public), then a better argument might have been advanced. But that is not the record presented for the contested tax years.

For the University, Ursino's commercial success would spin off incidental benefits, such as employment opportunities for students. Obviously, that is a positive side effect -- but not one required by the contractual arrangement. The University's greater emphasis on the importance of the restaurant's acclaim in providing positive notoriety -- a form of visual branding as the Township would describe it -- does not fulfill a public purpose. The University is not running a culinary institute. And the restaurant's generation of certain revenue, some percentage of which the Foundation used for scholarships, does not make an otherwise nonexempt purpose a public purpose.

Finally, there is no doubt that Title 18A gives to public universities wide latitude in the determination, delivery, and operation of their educational programs and institutions. See N.J.S.A. 18A:64-2. But that does not answer the question whether a public purpose for tax exemption purposes is present.

We are not asked to judge whether the University exceeded its statutory authority in deciding to house a commercial restaurant in its NJEFA-funded educational facility. See N.J.S.A. 18A:72A-3 (defining "Project" and "Educational facility"). We are determining whether the legislative purpose in crafting the exemption from local taxation in N.J.S.A. 54:4-3.3 anticipated the circumstances here -- the University contracting out the establishment and operation of an upscale for-profit commercial restaurant to compete with other local commercial restaurants that pay their fair share of local property taxes. To the extent that it did, the Legislature did not signal that a public purpose exception would apply. Rather, it provided for the taxation of leases, functional leases, and users of exempt public property for nonexempt purposes under N.J.S.A. 54:4-2.3 and -1.10.

In our judgment, the Tax Court's analysis properly examined the arguments advanced for tax exemption under N.J.S.A. 54:4-3.3 and found them lacking. We agree and hold that Gourmet Dining's interest in the subject property is not tax exempt under that provision.

## C.

The Township assessed Gourmet Dining on its belief that it was a lessee of the University's otherwise exempt public property. Gourmet Dining claims it is merely a manager and operator of the restaurant facility, not a tenant or lessee.

The Tax Court held that the contractual arrangement between Gourmet Dining and the Foundation through the MSA rendered Gourmet Dining's interest subject to taxation, whether viewed under N.J.S.A. 54:4-2.3 as the functional equivalent of a lease[9] or under N.J.S.A. 54:4-1.10.

Because N.J.S.A. 54:4-1.10 so clearly intends to cover user arrangements such as these, whether or not capable of being denoted as the functional equivalent of a lease, we rely on the Tax Court's analysis of that statute's applicability here. Having already concluded that Gourmet Dining's use, operation, and management of Ursino failed the public purpose test, we hold that it is taxable under N.J.S.A. 54:4-1.10, as the Tax Court rightly held.

---

[9] The Tax Court found that the MSA satisfied the requirements of a lease in being a contract, for a defined property, that delineates a set term (ten years), and which requires Gourmet Dining to pay a fixed annual fee. Gourmet Dining, 30 N.J. Tax at 422. On the final point of whether Gourmet Dining has the right to exclusively occupy the subject property, the court found that the MSA conferred the functional equivalent of exclusive use, enjoyment, and possession. Ibid.

30

In concluding on this issue, we add that, in our view, legislative intent seems clear. By enacting the loophole-closing provision of N.J.S.A. 54:4-1.10, the Legislature indicated that it did not wish for the public at large to underwrite the local tax obligation of the private operator of a for-profit commercial establishment on public property. See Eatontown Borough, 366 N.J. Super. at 633. Application of that intent leads to the conclusion that this for-profit commercial dining establishment on public property, which is not tied to providing dining hall or other student-oriented convenient sustenance, is liable to local taxing authority for the assessment of its interest in the subject property. Our holding does not affect taxation of the public entity.

VI.

To the extent that Gourmet Dining and the University also advance a claim for tax exemption based on N.J.S.A. 54:4-3.6, the preceding analyses foreshadow our conclusion.

To be eligible for exemption under that provision, property must be actually used for the tax-exempt purpose, the provision allowing for apportionment of space based on eligibility for exemption. In relevant part, the exemption is for

> all buildings actually used for colleges . . . provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said

31

portion shall be subject to taxation and the remaining portion only shall be exempt.

[N.J.S.A. 54:4-3.6.]

Gourmet Dining is a for-profit entity, and the restaurant, as contemplated by the MSA, is intended to make a profit. Gourmet Dining receives the gross revenue and, from that, it pays operating expenses, which notably expressly reference payment of local taxes. The MSA also calls for payment of the fixed fee and operations fee to the Foundation. As the Tax Court reasoned, the profit, after all expenses are paid, goes to Gourmet Dining. Thus, Gourmet Dining's use of the subject property does not constitute a use for the "college" but rather for itself.

The Appellate Division reversed that compelling reasoning based on its contrary view that public purpose had been demonstrated in these circumstances. Because we have rejected that conclusion and find that a public purpose has not been demonstrated, we reverse the Appellate Division judgment as to N.J.S.A. 54:4-3.6's application.

VII.

The application of the State's tax exemption statutes calls for fact-sensitive assessments in each circumstance, which we are satisfied was done carefully, thoroughly, and persuasively by the Tax Court. Based on our review of the circumstances presented herein, we agree with the Tax Court's

32

conclusions and accordingly reverse the judgment of the Appellate Division. We reinstate the judgment of the Tax Court that the subject property is not tax exempt under either N.J.S.A. 54:4-3.3 or -3.6 and that it is subject to taxation under N.J.S.A. 54:4-1.10.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE LaVECCHIA's opinion. JUSTICE TIMPONE did not participate.